IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-02563-PAB-KLM

MOHAMMED SALEH,

      Plaintiff,

v.

UNITED STATES OF AMERICA,
RON WILEY, Warden,
SARA REVELL, Warden,
D. KRIST, SIA,
JOHN DOE,
MICHAEL COLLINS, Unit Manager,
F.N.U. BREAN, Officer, and
TERESA HERMAN, ISM,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Defendants' seven **Motion[s] to Dismiss** [Docket Nos. 34-40; Filed October 15, 2010] (collectively, the "Motions").  The parties were directed to file a combined Response and combined Reply [Docket Nos 43 & 52].  Plaintiff, who is proceeding *pro se*, filed a Response to the Motions on December 20, 2010 [Docket No. 54],[1] and Defendants filed a Reply on January 7, 2011 [Docket No. 56].  The Motions have now been fully briefed and are ripe for resolution.

      Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1C.3., the Motions have been referred to this Court for recommendation.  The Court has reviewed the Motions,

_____

      [1] Plaintiff's combined Response was due on December 15, 2010 [Docket No. 52].  Given Plaintiff's *pro se* and incarcerated status, the Court considers it despite the fact that it was not timely filed.

Plaintiff's Response, Defendants' Reply, the entire case file, the applicable law and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motions be **GRANTED**.

## I.  Summary of the Case

Plaintiff Mohammed Saleh filed a federal lawsuit to address his incarceration at the United States Penitentiary, Administrative Maximum Prison in Florence, Colorado ("ADX") and the alleged violation of his constitutional rights.  The operative Complaint for purposes of resolution of Defendants' Motions was filed on March 19, 2010 [Docket No. 13]. Pursuant to the Complaint, Plaintiff seeks to address myriad issues ranging from a fight which occurred while Plaintiff was awaiting transfer out of ADX,[2] Plaintiff's conditions of confinement in the general population unit at ADX,[3] the alleged mishandling or destruction of Plaintiff's possessions, and the force exerted on Plaintiff by a guard on two occasions. Plaintiff alleges eight claims for relief against various Defendants.  His claims asserting constitutional injuries are asserted pursuant to *Bivens v. Six Unknown Agents of Fed'l Bureau of Narcotics*, 403 U.S. 388 (1971).

Claim One          Defendant United States' dissemination of Plaintiff's administrative grievance and its placement of Plaintiff in the transitional unit, both of which allegedly led to Plaintiff's

_____

[2] This fight was also at issue in Plaintiff's § 2241 habeas corpus application filed in Case No. 09-cv-02607-PAB-KLM.  The case was terminated after my Recommendation to deny the application was accepted [Docket Nos. 16, 19 & 20].

[3] Plaintiff's conditions of confinement were also at issue in a separate complaint filed by Plaintiff in Case No. 05-cv-02467-PAB-KLM.  The case was terminated after summary judgment was entered in favor of Defendants on the basis that Plaintiff's conditions of confinement at ADX were not atypical and did not implicate a liberty interest [Docket Nos. 350, 373 & 375].

|              | assault, violated the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680. |
|--------------|---|
| Claim Two    | Defendant Wiley's placement of Plaintiff in the transitional unit violated Plaintiff's Eighth Amendment rights. |
| Claim Three  | Defendants Wiley, Revell, Krist, Collins and Herman's placement of Plaintiff in the general population unit at ADX violated the Torture Victim Protection Act and the Alien Tort Claims Act, 28 U.S.C. § 1350. |
| Claim Four   | Defendants Wiley, Revell and Herman's mishandling of Plaintiff's incoming and outgoing mail violated Plaintiff's First Amendment rights. |
| Claim Five   | Defendants Wiley and Collins' denial of outdoor recreation violated Plaintiff's Eighth Amendment rights. |
| Claim Six    | Defendant Brean's use of force on two occasions was excessive and violated Plaintiff's Eighth Amendment rights. |
| Claim Seven  | Defendant United States' dissemination of Plaintiff's administrative grievance violated the Privacy Act, 5 U.S.C. § 552a. |
| Claim Eight  | Defendant Herman's destruction of Plaintiff's books, including a religious book, violated Plaintiff's First Amendment rights. |

## II. Standard of Review

Because federal courts are courts of limited jurisdiction, the Court must have a statutory basis for exercising jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir.

2002).  The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it.  Dismissal of a federal claim for lack of subject-matter jurisdiction "is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'"  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)).  A motion to dismiss pursuant to Rule 12(b)(1) may take two forms:  a facial attack or a factual attack.  When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  When reviewing a factual attack on a complaint supported by affidavits and other documents, the Court makes its own factual findings and need not convert the motion to one brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *Id.* at 1003.

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations."  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  That is, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1235 (10th Cir. 2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant

4

is liable for the alleged misconduct." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009).  Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  However, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Ashcroft*,129 S. Ct. at 1949 (citation omitted).

In support of its Motion, Defendant United States attached an affidavit and the ADX Step-Down Unit Program policy [Docket Nos. 34-1 & 34-2].  I may consider the attachments to the extent that they relate to a Fed. R. Civ. P. 12(b)(1) defense.  In addition, the policy is a matter of public record. *See Vibe Techs., LLC v. Suddath*, No. 06-cv-00812-LTB-MEH, 2006 WL 3404811, at *5 n.2 (D. Colo. Nov. 22, 2006) (unpublished opinion) ("This Court

may take judicial notice of court documents and matters of public record."). Accordingly, consideration of the attached material does not require the Court to analyze Defendant United States' Motion pursuant to summary judgment standards.

Finally, the Court must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 594, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III. Analysis

#### A.    Claims One and Seven

Claims One and Seven are related. Both claims address Defendant United States' alleged dissemination of an administrative grievance filed by Plaintiff to another inmate. Specifically, Claim One alleges that the dissemination, and Plaintiff's subsequent placement in the transitional unit awaiting transfer out of ADX, led to an assault on Plaintiff in violation of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680. *Complaint* [#13] at 6-9. Claim Seven alleges that the dissemination also violated the Privacy Act, 5 U.S.C. § 552a. *Id.* at 18.

#### 1.    FTCA

Defendant United States argues that Plaintiff did not adequately exhaust his

administrative remedies prior to filing this lawsuit.  *United States' Motion* [#34] at 3-7.  "As

a jurisdictional prerequisite, the FTCA bars claimants from bringing suit in federal court until

they have exhausted their administrative remedies."  *Duplan v. Harper*, 188 F.3d 1195,

1199 (10th Cir. 1999) (citing 28 U.S.C. 2675(a)).  In *Duplan*, the Tenth Circuit held that "as

a general rule, a premature 'complaint cannot be cured through amendment, but instead,

plaintiff must file a new suit.'"  *Id.* (quoting *Sparrow v. USPS*, 825 F. Supp. 252, 254-55

(E.D. Cal. 1993)).  Because exhaustion of an FTCA claim is jurisdictional, Plaintiff bears

the burden of proving that he adequately exhausted his claim by either attaching supporting

documentation to his Complaint or identifying with specificity the procedural history of his

attempts to exhaust and the outcome.  *See, e.g.*, *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir.

1994); *Three-M Enterprises, Inc. v. United States*, 548 F.2d 293, 294-95 (10th Cir. 1977).

Here, Defendant contends that the administrative tort claim filed by Plaintiff did not

include sufficient information to fully exhaust the claim Plaintiff now seeks to pursue.

*United States' Motion* [#34] at 6-7.  Specifically, Defendant argues that the administrative

tort claim did not contain any allegation related to the dissemination of Plaintiff's grievance.

An administrative tort claim must "(1) sufficiently describe[e] the injury to enable the agency

to begin its own investigation, and (2) [include] a sum certain damages claim."  *Bradley v.

United States ex rel. Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991) (citation

omitted).  A claim's failure to contain the prerequisite information renders it ineffective.

*Nero v. Cherokee Nation*, 892 F.2d 1457, 1463 (10th Cir. 1989); *see also Three-M*, 548

F.2d at 294-95 (noting that because FTCA waives sovereign immunity, jurisdictional issues

like exhaustion must be strictly construed).

Defendant avers that the relevant administrative tort claim filed by Plaintiff alerted

7

Defendant to the fight that occurred and the injury sustained, but did not allege that Plaintiff "was placed in danger as a result of the dissemination of one his administrative grievances to another inmate.   There is no mention . . . of the alleged dissemination of an administrative remedy request . . . .   Because Plaintiff provided no notice of these allegations . . ., they were not investigated in connection with the investigation of" his administrative tort claim.   *Brieschke Affidavit* [#34-1] at 3-4.   Plaintiff concedes that his administrative tort claim did not mention the dissemination of his administrative grievance but argues that the BOP should have known that was the underlying basis of his complaint. *Response* [#54] at 5.

I find that Plaintiff's failure to alert Defendant to the full factual basis for and extent of his claim did not provide Defendant with the opportunity to review and/or correct any error that may have occurred prior to litigation.   *See generally Woodford v. Ngo*, 548 U.S. 81, 90 (2006).   To properly exhaust an FTCA claim, "notice of the facts and circumstances underlying a claim" must be provided.   *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852-53 (10th Cir. 2005).   Sufficient notice was not provided by the administrative tort claim at issue here.   Because "bringing an administrative claim is a jurisdictional prerequisite to suit, imposed by Congress, which the courts have no power to waive," I find that the Court has no jurisdiction to review the aspect of Plaintiff's FTCA claim which involves Defendant's alleged dissemination of an administrative grievance. *See Nero*, 892 F.2d at 1463.[4]

---

[4] To the extent that Plaintiff argues in his Response that he does not have to plead exhaustion pursuant to *Jones v. Bock*, 549 U.S. 199 (2007), the argument is misplaced.   *See Response* [#54] at 5.   *Jones* relates to a prisoner's ability to pursue *Bivens* claims and the exhaustion requirements of the Prison Litigation Reform Act.   While exhaustion of a *Bivens*

The other portion of Plaintiff's FTCA claim also seeks to address Defendant United States' (and specifically Defendant Wiley's), placement of Plaintiff in the transitional unit while awaiting transfer out of ADX. While the FTCA waives a federal agency's sovereign immunity in many areas, it is subject to several exceptions. The most notable exception is referred to as the "discretionary function" exception. 28 U.S.C. § 2680(a). The discretionary function exception immunizes an agency from tort liability for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Id.* This exception to the waiver of sovereign immunity is jurisdictional, meaning that it is "a jurisdictional prerequisite to suit, which [P]laintiff must ultimately [overcome] as part of his overall burden to establish subject matter jurisdiction." *Baird v. United States*, 653 F.2d 437, 440 (10th Cir. 1981).

The Supreme Court has enumerated a two-part test to determine whether the conduct sought to be adjudicated pursuant to the FTCA falls within the discretionary function exception. First, the Court must determine "whether the action is a matter of choice for the acting employee." *Berkovitz v. United States*, 486 U.S. 531, 536 (1991). If the answer to the first consideration is yes, then the Court must determine "whether the type of action at issue is 'susceptible to policy analysis,'" meaning that the challenged action involves considerations of classification, security, safety, staffing, medical needs, facility resources, etc. *Sydnes v. United States*, 523 F.3d 1179, 1183 (10th Cir. 2008) (quoting *United States v. Gaubert*, 499 U.S. 315, 322, 325 (1991)); *see also Harper v.*

---

claim is not a jurisdictional prerequisite to filing suit, exhaustion of an FTCA claim is. *Compare Jones*, 549 U.S. at 216, *with Duplan*, 188 F.3d at 1199.

*United States*, No. 5:08-cv-403, 2009 WL 3190377, at *4 (E.D. Ky. Sept. 30, 2009) (unpublished decision); *Muick v. Reno*, 83 Fed. Appx. 851, 853 (8th Cir. Dec. 10, 2003) (unpublished decision). "[T]he purpose of the exception is to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Gaubert*, 499 U.S. at 323 (citation omitted).

Here, decisions to place an inmate in the Step-Down Unit Program, including decisions regarding when to transfer an inmate through the various levels of the Program, are left to the discretion of the prison. *See Step-Down Unit Program Policy* [#34-2] at 4. While the Program policy contains multiple factors to consider in determining where to place an inmate at ADX, it does not mandate placement in any particular unit at any particular time. Accordingly, decisions of placement are "a matter of choice for the acting employee." *See Berkovitz*, 486 U.S. at 536. *see also Flynn v. United States*, 902 F.2d 1524, 1530 (10th Cir. 1990) (noting that where "duty is neither mandatory nor clearly specified, it is discretionary").

Given satisfaction of the first factor, the Court considers whether the discretion held by prison officials is a matter which necessitates a policy analysis. FTCA claims involving placement decisions, even decisions which ultimately lead to injury due to negligence, have been routinely rejected pursuant to the discretionary function exception due to the myriad policy considerations at issue. *See, e.g.*, *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) (barring FTCA claim involving inmate classification and placement); *Cohen v. United States*, 151 F.3d 1338, 1344 (11th Cir. 1998) (barring FTCA claim involving assault from negligent classification); *Morales v. United States*, 371 Fed. Appx. 528, 533-

10

34 (5th Cir. Mar. 29, 2010) (unpublished decision) (barring FTCA claim involving placement in unit with known enemy and subsequent assault); *see also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (resolving a related issue and noting that "Congress has given federal prison officials full discretion" and that there is "no legitimate statutory" basis for a prisoner to challenge classifications derived from such discretion); *Marchesani v. McCune*, 531 F.2d 459, 461 (10th Cir. 1976) (noting that "the classification of prisoners rests within the sound discretion of the [BOP]").   Considering the above, I find that Defendant's placement of Plaintiff in the transitional unit at ADX pursuant to the Step-Down Unit Program clearly falls within the discretionary function exception.   Accordingly, Defendant maintains sovereign immunity with respect to classification and placement of Plaintiff and this portion of his FTCA claim is jurisdictionally barred.   As both aspects of Plaintiff's FTCA claim are jurisdictionally barred, I recommend that Claim One be dismissed.

### 2.     Privacy Act

Plaintiff also contends that the alleged dissemination of Plaintiff's admininistrative grievance violates the Privacy Act, 5 U.S.C. § 552a.   *Complaint* [#13] at 18.   As a preliminary matter, although Plaintiff addresses this claim to an unnamed BOP official, I may dismiss any prisoner claim  that does not state a suitable basis for relief on my own motion or on the motion of a party.   42 U.S.C. § 1997e(c).   Here, Defendant United States, who allegedly employs the unnamed BOP official, seeks dismissal of this claim.   *See United States' Motion* [#34] at 11-14.

Specifically, Defendant contends that the Privacy Act does not provide a civil remedy to Plaintiff for the dissemination of his administrative grievance.   Pursuant to 5 U.S.C. § 552a(j)(2), an agency may exempt certain records from protection via civil action.   The BOP

11

has done so here with respect to its Administrative Remedy Record System.  28 C.F.R. §

16.97(a)(3) (exempting the BOP's failure to maintain privacy of administrative grievance

from remedy via civil suit pursuant to 28 U.S.C. § 552a(g)).  Accordingly, Plaintiff has no

private right of action pursuant to the Privacy Act with respect to the alleged dissemination

of one of his grievances.  *See Townsend v. Vazquez*, No. CV207-043, 2008 WL 4179828,

at *5 (S.D. Ga. Sept. 10, 2008) (unpublished decision) (holding that BOP official's public

disclosure of inmate grievance information- not actionable because exempt from Privacy

Act protections).

To the extent that Plaintiff argues that prior to dismissal of this claim, he should be

permitted discovery to ascertain the identity of the BOP official who made the disclosure,

the request has no merit.  *See Response* [#54] at 6-7.  First, requests for relief must be

contained in a separately filed motion.  D.C.COLO.LCivR 7.1C.  Second, the agency, not

an individual, is the proper named party in a Privacy Act claim.  *See Parks v. IRS*, 618 F.2d

677, 684 (10th Cir. 1980).  Third, regardless of the named party, Plaintiff has no cause of

action for his alleged injury pursuant to the Privacy Act.  *See* 28 C.F.R. § 16.97(a)(3).  As

such, discovery and/or later amendment to include a named party would be futile.

Accordingly, I recommend that Claim Seven be dismissed.

In summary, I **RECOMMEND** that Defendant United States' Motion [#34] be

**GRANTED** in regard to Claims One and Seven.  Because I recommend dismissal of Claim

One on the basis of lack of jurisdiction, the dismissal of this claim should be without

prejudice.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("[W]here

the district court dismisses an action for lack of jurisdiction . . . the dismissal must be

without prejudice.").

**B.    Claim Two**

Plaintiff alleges that Defendant Wiley's placement of Plaintiff in the transitional unit violated Plaintiff's Eighth Amendment rights. *Complaint* [#13] at 9-12. Specifically, Plaintiff contends that Defendant Wiley failed to protect Plaintiff by placing him in a unit with an inmate who later assaulted him.[5]   Defendant Wiley argues that regardless of whether Plaintiff's placement in the transitional unit posed an objectively serious risk of harm, Plaintiff has failed to adequately allege that Defendant Wiley should have known of the harm or acted in defiance of such knowledge. *Wiley's Motion* [#38] at 4-6.

The Eighth Amendment requires that "prison officials . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).   The Court's analysis of Plaintiff's Eighth amendment claim involves both an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).   As to the objective component, the Court considers whether Plaintiff was deprived of a sufficiently serious basic human need, i.e., an extreme deprivation. "Because discomfort is 'part of the penalty that criminal offenders pay for their offenses against society, . . . only those deprivations denying 'the minimal civilized measures of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations omitted).   More specifically, in relation

---

[5] Although not material to my review here, the Court notes that along with the other inmate, Plaintiff was charged with and found guilty of the disciplinary infraction of fighting regarding the event constituting the alleged assault. *See Saleh v. Wiley*, Case No. 09-cv-02607-PAB-KLM [Docket No. 16].

to a failure to protect claim, Plaintiff must provide sufficient factual allegations indicating that his conditions of incarceration posed a substantial risk of serious harm. *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003).

As to the subjective component, the Court considers whether Defendant Wiley intended the harm, i.e., acted with deliberate indifference to the harm that could result. Deliberate indifference can only be proved by showing that Defendant Wiley "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837. More specifically, in relation to a failure to protect claim, Plaintiff must provide sufficient factual allegations indicating that "the official [was] both aware of facts from which the inference could be drawn that a substantial risk of harm exist[ed], and he [drew] the inference." *Perkins v. Kan. DOC*, 165 F.3d 803, 809 (10th Cir. 1999). The subjective component requires a showing of "obduracy and wantonness." *Whitely v. Albers*, 475 U.S. 312, 319 (1986).

This standard recognizes a balance between "the exigencies of running a prison" and the "'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" *DeSpain, v. Uphoff*, 264 F.3d 965, 973 (10th Cir. 2001) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)). Moreover, "[t]he Eighth Amendment 'does not mandate comfortable prisons,' and conditions imposed may be 'restrictive and even harsh.'" *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998) (citation omitted). Thus, while prison officials must take reasonable measures in securing a safe and humane environment for prisoners, the Court should take into account the circumstances of the challenged conduct. *Id.* at 974; *see also Hudson*, 503 U.S. at 5-6 (holding that a court should give wide-ranging deference to prison staff).

Here, Plaintiff contends that a 2007 administrative grievance submitted by Plaintiff which complained about other inmates was "provided . . . to a known member of the Aryan Brotherhood" via a Freedom of Information Act request. *Complaint* [#13] at 6. When Plaintiff learned of this, he "wrote to Warden Wiley to inform him that Plaintiff's Administrative Remedy had been disseminated and . . . [that he feared] for his safety." *Id.* at 7. Plaintiff further claims that "Lieutenant M.L. Bier told Plaintiff that the unredacted [grievance] . . . was given to the known [Aryan Brotherhood ("AB")] member. This AB member is always looking to find 'snitches' within his unit." *Id.* Plaintiff also contends that in response this issue, "Warden Wiley told Plaintiff during his rounds that he's in charge personally and Plaintiff don't [sic] have to worry." *Id.* at 8. Thereafter, in May 2008, Plaintiff was transferred to the transitional unit. The alleged assault occurred in September 2008. *Id.* According to Plaintiff, Lt.. Bier informed Plaintiff that he (Bier) "believed that the dissemination of the administrative remedy was the cause of the attack . . . ." *Id.* Finally, Plaintiff contends that "Warden Wiley knew or should have known of the risk and failed to take action after Plaintiff complained to him in writing and verbally. He did nothing even after [Lt.] Bier informed him of the substantial risk of bodily injury or death." *Id.* at 11.

Assuming that Plaintiff has stated an objectively serious constitutional deprivation, I find that Plaintiff's allegations, i.e., that Defendant Wiley "knew or should have known of the risk and failed to take action after plaintiff complained to him in writing and verbally," do not sufficiently satisfy the subjective component. *See Complaint* [#13] at 11. While Plaintiff's allegations tend to show that Defendant Wiley was aware that Plaintiff's unredacted grievance had been disseminated and that there might be inmates who disliked Plaintiff as a result, they do not show that Warden Wiley proceeded in conscious disregard

15

of this knowledge.  For example, the alleged dissemination occurred in July 2007.  Plaintiff was not placed in the transitional unit until May 2008.  In between July 2007 and May 2008, no harm befell Plaintiff.  Indeed, both Defendant Wiley and Lt. Bier offered Plaintiff their assistance during this time to set Plaintiff's mind at ease.  After Plaintiff's transfer to the transitional unit, he was incarcerated there without incident for approximately four months before the alleged assault occurred.  Other than Lt. Bier's alleged belief, none of Plaintiff's allegations suggest that the transitional unit contained inmates with a known dislike for Plaintiff or that Defendant Wiley knew that to be the case.  Rather, the most that can be said is that Defendant Wiley placed Plaintiff in the transitional unit with the belief that although there might be inmates who disliked Plaintiff, nothing about this particular unit led to the unmistakable inference that prison staff could not protect Plaintiff or that Plaintiff was likely to be harmed.  Indeed, Plaintiff was not harmed for a significant period of time after his transfer.

Furthermore, other than Plaintiff's conclusory assertion that "Warden Wiley . . . was aware of [the dissemination and potential harm]," see *id.* at 8, Plaintiff does not contend that the inmate who received the grievance, or individuals associated with the inmate, were located in the transitional unit; that Defendant Wiley knew that they were; or that Plaintiff's placement in the transitional unit was more likely to lead to serious harm than his placement elsewhere.  Rather, Plaintiff merely contends that "Warden Wiley, through his correctional judgment and experience, knew or should have known . . . the consequences that would occur" by placing Plaintiff in the transitional unit.  *See Complaint* [#13] at 11. Without allegation that Defendant Wiley knew enemies of Plaintiff were located in the transitional unit and that sufficient safeguards had not been undertaken, such "correctional

16

judgment" does not equate to "obduracy and wantonness."  *See Whitely*, 475 U.S. at 319. Neither does Plaintiff's contention that a nonparty ADX officer informed Plaintiff that he "believed that the dissemination of the administrative remedy was the cause of the attack." *See Complaint* [#13] at 8.  This opinion does not speak to Defendant Wiley's state of mind or knowledge at the time when he placed Plaintiff in the transitional unit.  Indeed, at the time of Plaintiff's placement there and for four months thereafter, Defendant Wiley's decision had no apparent adverse effect on Plaintiff.  Moreover, I am mindful of the difficult decisions Defendant Wiley, as the prison warden, was required to routinely make. Plaintiff's placement in the transitional unit awaiting transfer out of ADX, a transfer Plaintiff specifically sought in Case No. 05-cv-02467-PAB-KLM, is clearly a decision entitled to deference.  *See, e.g.*, *Hudson*, 503 U.S. at 5-6.

Finally, I note that Plaintiff's alleged injury could just have easily been caused by a random act.  For example, as noted above, Plaintiff does not contend that the inmate who harmed him actually knew about the grievance or that he was a member of the Aryan Brotherhood.  Defendant Wiley cannot, and should not, be held responsible for every instance of violence between inmates.  Furthermore, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  *Ashcroft*, 129 S. Ct. at 1950 (quoting *Twombly*, 550 U.S. at 557).  Here, I find that the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."  *Id.*  Therefore, I agree that the allegations do not sufficiently allege that Defendant Wiley was "aware of facts from which the inference [of harm] could be drawn" or that "he [drew] the inference."  *See Perkins*, 165 F.3d at 809.

Because Plaintiff's allegations fail to satisfy the subjective component of a failure to protect claim, I find that the Eighth Amendment is not implicated.  Plaintiff's failure to state a constitutional claim necessarily entitles Defendant Wiley to qualified immunity.  *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001); *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) ("The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.'" (citation omitted)); *see also Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009) (holding that although qualified immunity determination involves a two-part inquiry, if Plaintiff fails either inquiry, no further analysis need be undertaken and qualified immunity is appropriate).

Accordingly,  I **RECOMMEND** that Defendant Wiley's Motion [#38] be **GRANTED** with regard to Claim Two.[6]

---

[6] To the extent that Plaintiff also asserts a claim against an unnamed BOP official for his alleged dissemination of Plaintiff's grievance, this allegation was the subject of Claim Seven and is rightfully addressed pursuant to that claim. *See Castro v. United States*, 450 U.S. 375, 381 (2003) (noting that it is appropriate for federal courts to ignore the legal labels attached to a *pro se* party's claims "to create a better correspondence between the substance of [the party's claims] and [the] underlying legal basis").  In any event, I may resolve the present claim now pursuant to 42 U.S.C. § 1997e(c).  Given that Plaintiff does not allege that the inmate who injured him knew about the grievance, or provide sufficient detail about why it should be inferred that the BOP official knew or should have known that dissemination was likely to lead to serious injury, the claim suffers from the same deficiencies as stated in regard to Defendant Wiley.  First, considering the amount of time between the alleged dissemination and the alleged assault, it is not clear that the injury was, in fact, likely to occur or that such should have been inferred by the official.  Second, even assuming that the official knew that the dissemination of an unredacted grievance would likely lead to serious harm, Plaintiff does not sufficiently contend that the official acted deliberately.  At most, and without supporting facts suggesting that the official acted with a callous intent, I find the allegation against the official rises only to the level of negligence.  Negligence is insufficient to state a claim for an Eighth Amendment violation under *Bivens*.  *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 n.4 (10th Cir. 2001); *see also Wojtkiewicz v. Gunter*, 978 F.2d 1268 (table) (10th Cir. Oct. 23, 1992) (unpublished decision)

## C.    Claim Three

Plaintiff contends that Defendants Wiley, Revell, Krist, Collins and Herman's placement of Plaintiff in the general population unit at ADX violated the Torture Victim Protection Act and the Alien Tort Claims Act, 28 U.S.C. § 1350.  *Complaint* [#13] at 12-13. Neither Act applies here.

In relation to the Torture Victim Protection Act ("TVPA"), Plaintiff must allege that Defendants (1) were acting under the authority or color of law of a foreign nation and (2) subjected Plaintiff to torture or killing.  *Kyler v. Montezuma County*, 203 F.3d 835 (table) (10th Cir. Jan. 28, 2000) (unpublished decision).   I need not address the second requirement as the first requirement is clearly not met.  For purposes of the TVPA, "foreign nation" means a country other than the United States.  In other words, the TVPA does not protect citizens of other countries, like Plaintiff, from torture by the United States acting under its laws.  *See, e.g.*, *Arar v. Ashcroft*, 585 F.3d 559, 568 (2d Cir. 2009) (noting that "to state a claim under the TVPA, [plaintiff] must adequately allege that the defendants possessed power under [a foreign country's] law, and that the offending actions derived from an exercise of that power").   It protects individuals from being tortured under the authority of the law of a foreign country.  *See id.* (dismissing claim where plaintiff alleged that United States officials "acted under color of federal, not Syrian, law").

Defendants are officers and officials of the United States government.  They were not, nor has Plaintiff alleged that they were, acting under the authority of a foreign government.  On this basis alone, Plaintiff's TVPA claim must fail.  *See id.*; *Kyler*, 203 F.3d

---

(holding that no constitutional violation if prison violates its own rules).  As such, Claim Two should be dismissed in its entirety.

835 (table).

Regarding Plaintiff's purported claim pursuant to the Alien Tort Claims Act ("ATCA"), there exists no private right of action for such a claim. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 724 (2004). While the Act does instill jurisdiction in a federal court to adjudicate a common law tort claim held by an alien, Plaintiff has not alleged one here in relation to his incarceration at ADX.[7] On this basis alone, the ATCA claim must fail. Assuming an attempt to assert a common law tort claim can be interpreted from Plaintiff's Complaint in relation to this claim, Plaintiff must allege that (1) he is an alien; (2) a tort has been committed; and (3) the tort was in violation of the laws of nations or of a treaty of the United States. *Kyler*, 203 F.3d 835 (table). I need not address the first and third requirements as the second requirement is clearly not met here.

Plaintiff has not sufficiently alleged the commission of an actionable tort by his mere incarceration at ADX. "Because Plaintiff's claim involves the legally sanctioned punishment imposed upon him [here, his placement at ADX], and not . . . any actionable violation of his rights, Plaintiff has failed to a state a claim under [the ATCA]." *See Christ v. Detroit Police Dep't*, No. 06-11833, 2007 WL 2050793, at *3 (E.D. Mich. July 13, 2007) (unpublished decision). The District Judge's recent decision in Case No. 05-cv-02467-PAB-KLM, that no reasonable jurist could conclude that Plaintiff's conditions of confinement in the general

_____

[7] Pursuant to the allegations in Plaintiff's Complaint, this claim appears to be limited to Plaintiff's placement in the general population unit at ADX. *See Complaint* [#13] at 12-13. It is not related to Plaintiff's later placement in the transitional unit where an alleged assault occurred. Indeed, Plaintiff makes no mention of the alleged assault in relation to this claim and instead argues that the substance of his claim relates to his placement in "prolonged and indefinite solitary confinement under extreme conditions" and the "denial of adequate, decent treatment." *Id.*

population at ADX violated his constitutional rights, clearly undermines any allegation that Plaintiff's confinement is not a legally sanctioned punishment or that it could be construed as a tort pursuant to the ATCA. *See generally Saleh v. BOP*, No. 05-cv-02467-PAB-KLM, 2010 WL 5464294 (D. Colo. Dec. 29, 2010) (unpublished decision) (adopting *Saleh v. BOP*, No. 05-cv-02467-PAB-KLM, 2010 WL 5464295 (D. Colo. Nov. 23, 2010)). In addition, the Tenth Circuit has repeatedly refused to view the conditions at ADX as constitutionally cruel. *See, e.g.*, *Ajaj v. United States*, 293 Fed. Appx. 575, 582-83 (10th Cir. Sept. 15, 2008) (unpublished decision).[8]

Accordingly, I **RECOMMEND** that Defendants' Motions [##35, 36, 38-40] be **GRANTED** with regard to Claim Three.

### D.    Claim Four

Plaintiff contends that Defendants Wiley, Revell and Herman's mishandling of Plaintiff's incoming and outgoing mail violated Plaintiff's First Amendment rights. *Complaint* [#13] at 13-14.    Specifically, Plaintiff contends that Defendants "issued memos on or around July 2008" to hold Plaintiff's incoming and outgoing mail and to "send it to Washington, D.C." *Id.* at 14.  In addition, Plaintiff contends that Defendants have a "secret policy" of destroying Plaintiff's mail.  *Id.*  Defendants raise two arguments for dismissal in relation to Claim Four.  First, Defendants contend that Plaintiff has no *Bivens* right of action

---

[8] Even assuming that Plaintiff intended to assert that the alleged assault that occurred in the transitional unit constitutes an actionable tort as required by the second element, the claim also fails on the third element.  Plaintiff has failed to allege a violation of any judicially-enforceable international treaty or law.  Here, Plaintiff claims that his conditions of confinement at ADX "violate the International covenant on Civil and Political Rights." *Complaint* [#13] at 13. However, this covenant is "not addressed to the judicial branch of our government" and does not, "by [its] terms, confer rights upon individual[s]" in this context.  *Kyler*, 203 F.3d 835 (table).

for First Amendment claims.  *See, e.g.*, *Wiley's Motion* [#38] at 8-9.  Second, Defendants contend that Plaintiff fails to state a claim for relief.  *See, e.g.*, *id.* at 9-12.

In relation to Defendants' threshold argument, the Supreme Court has not recognized that federal prisoners have a right of action for damages against federal officials pursuant to *Bivens* in this context.  Indeed, the Supreme Court has explicitly refused to acknowledge that federal prisoners may bring a claim for monetary damages based upon an alleged First Amendment violation.  *See, e.g.*, *Ashcroft*, 129 S. Ct. at 1948 (noting that Court had "declined to extend *Bivens* to a claim sounding in the First Amendment"); *see also Bush v. Lucas*, 462 U.S. 367, 390 (1983) (refusing to recognize a right to seek damages for alleged First Amendment violation pursuant to *Bivens*).  Arguably, such claims have not been recognized by the Supreme Court because prisoners may pursue FTCA claims or claims for injunctive relief regardless of an inability to pursue a *Bivens* damages claim.  *See Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (noting that adequate, alternative bases for pursuing a particular claim amount "to convincing reason for the Judicial Branch to refrain from providing new and freestanding remedy in damages"); *cf.* 42 U.S.C. § 1997e(e) (noting that prisoner not entitled to claim for money damages where no physical injury shown).

The Court agrees with Defendants that until *Bivens* has been extended to First Amendment claims in this context, there is no legal basis to recognize any claim for damages against these Defendants in their individual capacities.[9]  This is particularly true

---

[9] Although courts in the Tenth Circuit have appeared to assume that individuals may bring a *Bivens* money damages claim for alleged First Amendment deprivations, it is not clear that these courts were asked to determine the threshold issue of availability of this form of relief in the first instance.  *See, e.g.*, *Allmon v. BOP*, No. 08-cv-01182-ZLW-CBS, 2010 WL 2163773,

in relation to this claim because other adequate avenues of relief are available to Plaintiff such that he is not foreclosed from litigating any alleged injuries in relation thereto. *See Schweiker v. Chilicky*, 487 U.S. 412, 421-23 (1988). To that end, I do not read Claim Four as being limited to a request for damages. To the extent that Plaintiff contends that Defendants continue to mishandle Plaintiff's mail such that injunctive relief could be provided, the claim is not barred.[10]

Considering whether Plaintiff's claim states a plausible factual and legal basis for injunctive relief, the Court notes that Plaintiff fails to provide any detail for his conclusory assertion that Defendants have been mishandling his mail. He identifies no particular piece of mail that was lost, destroyed or delayed. The Court also notes that Plaintiff fails to provide any factual support for his conclusory allegation that Defendants have a secret policy of destroying mail. Although Plaintiff is generally entitled to a presumption of truth regarding his allegations, conclusory statements without any detail or factual support are not entitled to this presumption. *See Twombly*, 550 U.S. at 554-55. Indeed, such statements are subject to rejection. *Ashcroft*, 129 S. Ct. at 1951.

---

at *2-4 (D. Colo. May 26, 2010) (unpublished decision). In this case, the alleged unavailability of the claim has been expressly raised by Defendants. Because the Supreme Court has never explicitly extended *Bivens* to the First Amendment, and for the reasons set forth above, the Court declines to do so here. *See, e.g., Bush*, 462 U.S. at 390; *see also Ashcroft*, 129 S. Ct. at 1948 (noting that "implied causes of actions are disfavored").

[10] Although Defendants contend that claims cannot be asserted against them for injunctive relief, Plaintiff's claims are asserted against Defendants in both their official and individual capacities. *See Complaint* [#13] at 3. Because a claim asserted against individual Defendants in their official capacities is essentially a claim against the United States, the claim could arguably go forward against the individuals in their official capacities or against the United States. *See generally Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted). The Court need not determine against whom the claim should proceed, however, if the claim does not state a sufficient factual and legal basis.

Regardless of Plaintiff's *pro se* status, he must nudge his claims from possible to plausible. *Id.* at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted); *see also* Fed. R. Civ. P. 8.

Not every instance of delayed mail amounts to a constitutional violation. *See, e.g.*, *Bruscino v. Pugh*, No. 02-cv-02362-LTB-PAC, 2006 WL 980580, at *7 (D. Colo. Apr. 11, 2006) (unpublished decision). Indeed, courts routinely recognize that an inmate's First Amendment rights are necessarily limited, "both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing *Pell v. Procuiner*, 417 U.S. 817, 822-23 (1974)). Here, the most detailed allegation referenced by Plaintiff is that Defendants have directed that Plaintiff's mail be sent to Washington, D.C. *See Complaint* [#13] at 14. Even assuming this statement is true, I find that the claim lacks sufficient detail to plausibly suggest that Defendants are violating Plaintiff's constitutional rights. Furthermore, I note that despite Plaintiff's conclusory contentions about the delay of his mail, the Complaint here was signed by Plaintiff on March 17, 2010, see *Complaint* [#13] at 22, and received by the Court two days later on March 19, 2010. On this pleading, the Court cannot conclude that "*this* plaintiff has a reasonable likelihood of mustering factual support for [*this*] claim[]." *Ridge at Red Hawk, LLC*, 493 F.3d at 1177.

In summary, Plaintiff's *Bivens* claim for monetary damages against the individual

Defendants should be dismissed.  In addition, to the extent that Plaintiff raises an injunctive request to address an ongoing injury, the claim is deficient as pled and should be dismissed.  Accordingly, I **RECOMMEND** that Defendants' Motions [##35, 38 & 40] be **GRANTED** with regard to Claim Four.[11]

### E.    Claim Five

Plaintiff contends that Defendants Wiley and Collins' alleged ninety-day denial of outdoor recreation violated Plaintiff's Eighth Amendment rights. *Complaint* [#13] at 15-16.[12] Plaintiff does not contend; however, that he was denied the opportunity for indoor exercise during this time period.  Defendants argue that Plaintiff's claim fails to constitute a sufficiently serious deprivation meant to be addressed by the Eighth Amendment.  *See, e.g.*, *Wiley's Motion* [#38] at 6-7.  Further, Defendants argue that Plaintiff fails to plead sufficient knowledge of Defendants Wiley and Collins to constitute deliberate indifference such that they are entitled to qualified immunity.  *See, e.g.*, *id.* at 6-7 & 11-12.

As noted above, Eighth Amendment claims have an objective and subjective component.  Here, I find that the claim can be resolved by considering whether Plaintiff has

---

[11] Although the Court could recommend that the dismissal of this claim be without prejudice to Plaintiff amending his Complaint to assert a claim for injunctive relief against the United States, I do not do so here.  To the extent that Plaintiff has an ongoing injury relating to his mail, nothing prevents him from filing a case against the United States to pursue it after exhaustion of the appropriate administrative remedies.  Given that the Court recommends dismissal of all other claims asserted herein, and that this claim was improperly asserted as a *Bivens* claim against individual Defendants, justice would not be served by permitting amendment.

[12] To the extent that Plaintiff also contends that the denial of outdoor exercise constitutes a due process violation pursuant to the Fifth Amendment, see *Complaint* [#13] at 16, this allegation was essentially addressed and resolved in Case No. 05-cv-02467-PAB-KLM. Furthermore, despite the multiple constitutional dimensions Plaintiff has associated with his claims, I am not rigidly guided by Plaintiff's labels and resolve Claim Five only pursuant to the Eighth Amendment.  *See Castro*, 450 U.S. at 381.

adequately pled a condition that satisfies the objective factor.  Plaintiff does not allege that he was denied the basic necessities of survival such as food, drink, sleep, sanitation, hygiene materials, bedding and utilities.  *See Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980).  Rather, he alleges that he was deprived of outdoor exercise for a ninety-day period of time.  Courts have consistently rejected Plaintiff's contention that the lack of outdoor exercise or fresh air to breath constitutes a *per se* Eighth Amendment violation, particularly where the prisoner gets some exercise each week.  *See, e.g.*, *Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987).

In particular, in a similar case involving an ADX prisoner, the Tenth Circuit held that the deprivation of outdoor exercise for the period of <u>one year</u> was "not sufficiently serious to implicate the Eighth Amendment."  *Ajaj*, 293 Fed. Appx. at 584.  Although the amount or frequency of outdoor exercise to which an inmate is entitled has not been precisely defined, the only right that is clearly delineated is the right to some exercise.  *Id.* (citations omitted).  Plaintiff's allegations fall short of alleging a complete deprivation of exercise. Furthermore, it has been recognized that the amount of exercise to which an inmate is entitled is reasonably impacted by the type of prison to which the inmate is assigned.  *See, e.g.*, *Caldwell v. Miller*, 790 F.2d 589, 601 (7th Cir. 1986).  Here, Plaintiff was assigned to the general population unit at the most secure prison in the United States, as was the inmate in *Ajaj*.  Plaintiff has failed to provide any basis for finding that his alleged ninety-day deprivation of outdoor exercise is distinguishable from the one-year deprivation of outdoor exercise in *Ajaj* such that the protections of the Eighth Amendment may now be implicated.

Finally, as noted earlier, my Recommendation in Case No. 05-cv-02467-PAB-KLM was recently adopted.  It found that the deprivation of outdoor exercise, when the

opportunity for indoor exercise was provided, did not amount to an extreme or atypical condition of confinement pursuant to the Fifth Amendment. *See generally Saleh*, 2010 WL 5464294, at *4-5 (adopting *Saleh*, 2010 WL 5464295, at *10-13). Although not necessarily dispositive here, this holding further reinforces that Plaintiff's alleged ninety-day deprivation of outdoor exercise does not rise to the level of a sufficiently serious deprivation. Because Plaintiff's allegations fail to state a constitutional claim, Defendants Wiley and Collins are entitled to qualified immunity. *Saucier*, 533 U.S. at 200-01; *see also Pearson*, 129 S. Ct. at 818.

Accordingly, I **RECOMMEND** that Defendants' Motions [##38 & 39] be **GRANTED** with regard to Claim Five.

### F.     Claim Six

Plaintiff contends that Defendant Brean's use of force on two occasions was excessive and violated Plaintiff's Eighth Amendment rights. *Complaint* [#13] at 16-17. Specifically, Plaintiff alleges that in October 2009, Defendant Brean "without warning . . . pulled plaintiff's hand behind his back causing him severe back pain." *Id.* at 16. Plaintiff also alleges that in December 2008, Defendant Brean "verbally assaulted plaintiff by threating [sic] him repeatedly when he gathers food trays and when plaintiff prays." *Id.* at 17. Defendant Brean argues that neither event amounts to a constitutional violation. *Brean's Motion* [#37] at 4-6.

Prison officials violate the Eighth Amendment when they use force "maliciously and sadistically" in order to cause harm regardless of whether the inmate suffered any injury. *Hudson*, 503 U.S. at 9. "That is not to say that every malevolent touch by a prison guard

gives rise to a federal cause of action." *Id.* To be sure, not every "push or shove" by a prison guard amounts to a constitutional violation. *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973), *overruled on other grounds by Graham v. Connor*, 490 U.S. 386 (1989). A minor use of force may be *de minimis* if it "is not of the sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 10 (quoting *Whitley*, 475 U.S. at 327).

As with traditional Eighth Amendment claims, the Court's analysis of Plaintiff's excessive force claim involves both an objective and a subjective component. *Wilson*, 501 U.S. at 298-300. First, the Court considers whether the alleged force "was objectively harmful enough to establish a constitutional violation." *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2002) (citation omitted). "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society," only those physical punishments rising above *de minimis* uses of force "are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 503 U.S. at 9-10 (citations omitted). While the presence of an injury is not required, presence or absence of an injury is a factor in the determination of whether Defendant Brean's conduct constituted an objectively serious use of force. *See Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992) (holding that "significant physical injury" is not required, but "[t]he extent of injury may be relevant in determining whether corrections officers unnecessarily and wantonly inflicted pain").

Second, as to the subjective component, the Court considers whether Defendant Brean intended harm, i.e., whether he acted "maliciously and sadistically." *See Hudson*, 503 U.S. at 9. Indeed, the touchstone inquiry in an excessive force claim is whether the force was applied in a "good-faith effort to maintain and restore discipline or maliciously and sadistically" to cause harm. *See DeSpain*, 264 F.3d at 978 (quoting *Whitley*, 475 U.S. at

320-21).  The subjective element can only be proved by showing that Defendant Brean acted with a sufficiently culpable state of mind.  *See Farmer*, 511 U.S. at 837; *Hudson*, 503 U.S. at 8.

Considering the 2009 conduct first, I find that the objective component is not satisfied.  In particular, I note that Plaintiff has not alleged in his Complaint that he suffered any ongoing pain as a result of Defendant Brean's alleged conduct.[13]  While not necessarily dispositive, the lack of ongoing pain tends to show that Defendant Brean's use of force was *de minimis*.  *See Sampley v. Ruettgers*, 704 F.2d 491, 495 (10th Cir. 1983) (holding that lasting injury or severe pain that is more than momentary is necessary for an Eighth Amendment claim).  Considering the entirety of the allegations contained in the Complaint, the Court finds that the conduct at issue is not sufficiently grave to implicate a constitutional injury.  *See, e.g., Sheffey v. Greer*, 391 F. Supp. 1044, 1046 (E.D. Ill. 1975) (holding that a punch in the face does not violate the Eighth Amendment because "although a spontaneous attack by a guard is 'cruel' and it is hoped 'unusual,'" it does not rise to the level of shocking or brutal conduct) (citations omitted).  Moreover, giving deference to prison officers' motives for using force against prisoners, I conclude that allegations regarding one instance of pulling Plaintiff's hand behind his back, even if true, do not rise to the level of a constitutional violation.  *See, e.g., Sampley*, 704 F.2d at 496 (holding that unprovoked pushing of inmate does not rise to the level of cruel and unusual

---

[13] Although Plaintiff contends in his Response that he did suffer ongoing pain from the incident "up till [sic] now," see *Response* [#54] at 19, this conclusory assertion is not entitled to a presumption of truth.  First, it is not contained in his Complaint, see *In re Qwest*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004), and second, it is not supported by sufficient factual allegations linking such pain to Defendant Brean's conduct, see *Ashcroft*, 129 S. Ct. at 1949.

punishment).  While Defendant Brean's conduct may have been inappropriate, it was not repugnant to the conscience of mankind so as to rise to the level of a constitutional violation.  *See Hudson*, 503 U.S. at 9-10; *see also Sampley*, 704 F.2d at 496 (noting that an intentional tort does not necessarily amount to constitutional violation).

Considering the 2008 conduct next, words of harassment, while arguably unacceptable, generally do not rise to the level of an objectively serious condition meant to be addressed by the Eighth Amendment.  *See Northington*, 973 F.2d at 1524 (noting that "verbal threats and harassment" are "necessarily excluded from the cruel and unusual punishment inquiry").  For example, the Tenth Circuit has held that there is no clearly established constitutional right to be free from harassment while incarcerated.  *Adkins v. Rodriguez*, 59 F.3d 1034, 1037-38 (10th Cir. 1995).  "The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimus*" verbal abuse that does not rise to the level of severe physical intimidation.  *Id.* at 1037 (citations omitted); *Northington*, 973 F.2d at 1524 (recognizing that only threats of "terror of instant and unexpected death" may rise to level of conduct actionable under the Eighth Amendment (citation omitted)).

Here, although Plaintiff claims that he feels threatened by Defendant Brean, he does not describe the threats or explain why, now several years after such alleged threats were made, Plaintiff reasonably fears for his safety.  The only additional detail provided in Plaintiff's Response regarding the substance of Defendant Brean's threats is that they related to "hate against Muslims."  *Response* [#54] at 19.  As in *Adkins*, I "cannot infuse defendant's [unidentified] words of . . . harassment with the sort of violence or threats of violence cognizable" pursuant to the Eighth Amendment.  *Adkins*, 59 F.3d at 1037; *see also*

*Joseph v. BOP*, 232 F.3d 901 (table) (10th Cir. Oct. 16, 2000) (unpublished decision) (holding that "the alleged instances of . . . harassment were not 'objectively, sufficiently serious' to demonstrate a use of force of a constitutional magnitude"); *Williams v. Anderson*, No. Civ.A. 03-3254-CM, 2004 WL 2282927, at *3-4 (D. Kan. Sept. 7, 2004) (unpublished decision) (finding that the verbal harassment alleged by the inmate, even when coupled with offensive sexual touching, did not "rise to the level of a constitutional violation"); *see also Gehl Group v. Koby*, 838 F. Supp. 1409, 1418-19 (D. Colo. 1993) (noting that mere threatening conduct, even if true, does not amount to constitutionally prohibited behavior); *Hallstein v. City of Hermosa Beach*, 87 Fed. Appx. 17, 19 (9th Cir. Dec. 9. 2003) (unpublished decision) (holding that foreboding and intimidating stares are not compensable).

In summary, Plaintiff has failed to allege sufficient facts, when taken as true, that plausibly state objectively serious conduct such as to involve a harm of constitutional proportions as defined by the Supreme Court.  Therefore, it is unnecessary to consider whether Defendant Brean's actions were deliberately indifferent or sufficiently malicious. Because Plaintiff's allegations fail to state a constitutional claim, Defendant Brean is entitled to qualified immunity.  *Saucier*, 533 U.S. at 200-01; *see also Pearson*, 129 S. Ct. at 818.

Accordingly, I **RECOMMEND** that Defendant Brean's Motion [#37] be **GRANTED** with regard to Claim Six.

### G.    Claim Eight

Plaintiff contends that Defendant Herman's destruction of Plaintiff's books, including a religious book, violated Plaintiff's First Amendment rights.  *Complaint* [#13] at 19-20.  As noted above, to the extent that Plaintiff asserts a *Bivens* claim for monetary damages in

relation to the destruction of his books, his claim his barred.  Until a right of action for alleged First Amendment violations has been recognized pursuant to *Bivens*, this claim has no legal basis.  However, to the extent that Plaintiff seeks injunctive relief to prevent any ongoing constitutional violation suffered by him, the claim should be resolved on its merits.

Considering whether Plaintiff's claim states a plausible factual or legal basis for injunctive relief, I note that although Plaintiff's Complaint appears to suggest that he suffers from an ongoing injury, he is, in fact, only seeking to adjudicate the alleged destruction of books that occurred on July 1, 2008.  *See id.* at 20.  While Plaintiff "asks the court to grant an injunction stopping this type of illegal practice," see *id.*, the Court has no authority to provide the requested relief to resolve an injury that is not ongoing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (requiring that, to pursue a particular claim, plaintiff must have an injury-in-fact, which is both "concrete and particularized" and "actual or imminent," and which can be redressed by a favorable decision); *see also Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005) ("The purpose of [injunctive relief] is not to remedy past harm but to protect plaintiff[] from irreparable injury that will surely result . . . .").  Because the alleged injury that Plaintiff seeks to remedy is one that has already occurred, and because Plaintiff does not allege that the injury is likely to reoccur, injunctive relief is not available.  *See Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1155 & n.6 (10th Cir. 2005) (quoting *San Diego County Gun Rights Comm'n v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) ("Because plaintiffs seek declaratory and injunction relief only . . . it is insufficient for them to demonstrate only a past injury").

In summary, Plaintiff's *Bivens* claim for monetary damages against Defendant Herman in her individual capacity should be dismissed.  In addition, to the extent that

Plaintiff raises an injunctive request, the claim is deficient as pled and should be dismissed. Accordingly, I **RECOMMEND** that Defendant Herman's Motion [#40] be **GRANTED** with regard to Claim Eight.

## IV. Conclusion

For the aforementioned reasons, I respectfully **RECOMMEND** that Defendants' seven Motions to Dismiss [##34-40] be **GRANTED**.

I FURTHER **RECOMMEND** that Claim One be dismissed without prejudice.

I FURTHER **RECOMMEND** that the remaining claims be dismissed with prejudice as to the Defendants against whom they are asserted and that this case be closed.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  March 8, 2011

BY THE COURT:

 s/ Kristen L. Mix

Kristen L. Mix
United States Magistrate Judge