IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 09-cv-02563-PAB-KLM

MOHAMMED SALEH

      Plaintiff,

v.

UNITED STATES OF AMERICA,
RON WILEY, Warden,
SARA REVELL, Warden,
D. KRIST, SIA,
JOHN DOE,
MICHAEL COLLINS, Unit Manager,
F.N.U. BREAN, Officer, and
TERESA HERMAN, ISM,

      Defendants.

---

**ORDER ACCEPTING IN PART AND OVERRULING IN PART MAGISTRATE JUDGE'S RECOMMENDATIONS**

---

This matter is before the Court on the defendants' seven separate motions to dismiss [Docket Nos. 34-40] plaintiff Saleh's *pro se* prisoner complaint [Docket No. 13]. These motions were referred to Magistrate Judge Kristen L. Mix and were fully briefed by the parties in a combined Response [Docket No. 54] and a combined Reply [Docket No. 56]. The magistrate judge issued a thorough Recommendation of United States Magistrate Judge [Docket No. 57], to which plaintiff has objected [Docket No. 58]. The Court takes up defendants' motions in light of plaintiff's objections and conducts the requisite de novo review.

## I. BACKGROUND

Plaintiff was an inmate at United States Penitentiary, Administrative Maximum Prison in Florence, Colorado ("ADX") and filed this lawsuit alleging violations of his constitutional rights while incarcerated there. Plaintiff is now housed at the United States Penitentiary in Marion, Illinois. *See* Docket No. 60. As the Recommendation includes a thorough summary of the eight claims asserted in plaintiff's amended complaint [Docket No. 13], the Court will not recite them here. Plaintiff's claims challenge his placement in a transitional unit, the mishandling of his mail, the denial of his outdoor recreation time, an officer's use of force, the dissemination of one of his administrative grievances, and the destruction of his books.

## II. STANDARD OF REVIEW

When a party files timely objections to a magistrate judge's recommendation of a dispositive motion, a district court reviews the objected-to portion of the recommendation de novo. Fed. R. Civ. P. 72. As plaintiff is proceeding *pro se*, the Court liberally construes his pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court may not act as an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110.

## III. ANALYSIS

### A. <u>Claims One and Seven</u>

In his first claim, plaintiff alleges that defendant Warden Wiley violated the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, by transferring him to a transitional unit where he was attacked by another inmate. Plaintiff claims the attack

was caused by ADX staff disseminating an unredacted administrative grievance that plaintiff filed to a member of the Aryan Brotherhood. In his seventh claim, plaintiff alleges that defendants violated the Privacy Act, 5 U.S.C. § 552a, by disseminating the grievance. The magistrate judge addressed these claims together because they are based on related events. The Court will do the same.

### *1. Federal Tort Claims Act*

Plaintiff's FTCA claim can be divided into two components. Plaintiff alleges that the United States violated the FTCA by: (1) disseminating his administrative grievance; and (2) transferring plaintiff to the transitional "D/B Unit" where he was attacked. Defendant United States argues that the Court does not have jurisdiction over the first component of plaintiff's FTCA claim because plaintiff did not exhaust his administrative remedies. In order to properly exhaust this claim, plaintiff must have filed an administrative tort claim that "sufficiently describ[ed] the injury to enable the agency to begin its own investigation," with "a sum certain damages claim." *Bradley v. United States ex rel. Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991) (citation omitted). The United States has submitted the only two administrative tort claims filed by plaintiff, one of which relates to the subject matter of plaintiff's FTCA claim. *See* Docket No. 34-1 at 9.[1] In this administrative claim, plaintiff states that he was attacked "due to negligence of staff at USP Florence and due to the hustle [sic] environment which the

---

[1] The Court agrees with the magistrate judge that consideration of this document, as well as the Bureau of Prison's ("BOP") Step-Down Policy, *see* Docket No. 34-2, is appropriate because they relate to the United States' Fed. R. Civ. P. 12(b)(1) defense that the Court does not have subject matter jurisdiction over plaintiff's FTCA claim. *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

staff [are] aware of it But they fail to protect me & others." *Id.* The magistrate judge agreed with the United States that this claim was insufficient to put the United States on notice of his injury because it did not mention the dissemination of plaintiff's grievance or plaintiff's theory that dissemination of the grievance caused the attack. *See* Docket No. 57 at 8. The Court agrees with the magistrate judge. The tort alleged in claim one is not the attack itself, but the United States' dissemination of the grievance and subsequent failure to protect plaintiff from the attack. The grievance's statement that the staff negligently failed to protect plaintiff from the hostile environment at the prison is insufficient to give the United States "notice of the facts and circumstances" underlying his claim such that it could be properly investigated. *See Estate of Trentadue ex. rel. Aguilar v. United States*, 397 F.3d 840, 853 (10th Cir. 2005). Therefore, the Court does not have jurisdiction over plaintiff's claim that the United States violated the FTCA by distributing his administrative grievance. *See Nero v. Cherokee Nation*, 892 F.2d 1457, 1463 (10th Cir. 1989).

As for the second component of plaintiff's FTCA claim, that his transfer violated the FTCA, the United States argues that the Court does not have jurisdiction over this component because the decision to transfer plaintiff to the D/B Unit falls under the FTCA's "discretionary function exception." The FTCA is only a limited waiver of the federal government's sovereign immunity from private suit and is subject to several exceptions. The "discretionary function exception" states that the FTCA does not apply to claims based "upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved be abused."

28 U.S.C. § 2680(a). Determining whether the discretionary function applies to a government action requires applying a two-part test: first, "a court must 'consider whether the action is a matter of choice for the acting employee,'" and, if it is, it "must then consider whether the type of action at issue is 'susceptible to policy analysis.'" *Sydnes v. United States*, 523 F.3d 1179, 1183 (10th Cir. 2008) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988) and *United States v. Gaubert*, 499 U.S. 315, 325 (1991)).

Plaintiff was placed in the transitional D/B Unit as part of his participation in ADX's Step-Down program. The magistrate judge found, based on the submitted Step-Down policy, that decisions regarding placement in the program require the BOP officials involved to exercise their judgment and that such judgments are susceptible to a policy analysis. The Court agrees. First, the admission to the Step-Down program and placement in a transitional unit is not mandated by BOP policy; rather, once an inmate meets certain mandatory criteria for eligibility, a committee decides whether to actually admit him into the program. *See* Docket No. 34-2 at 4. Second, this decision is clearly based in "considerations of public policy" involving an inmate's readiness to progress to a less restrictive environment. *See Berkovitz*, 486 U.S. at 537; *see also Morales v. United States*, 371 F. App'x 528, 533 (5th Cir. 2010) (BOP's placement of prisoner triggers discretionary function exception); *Enlow v. United States*, 161 F. App'x 837, 839-40 (11th Cir. 2006) (same); *Muick v. Reno*, 83 F. App'x 851 (8th Cir. 2003) (FTCA claim arising from inmate attack barred by discretionary-function exception based on BOP's staffing, classification and placement of inmates). Therefore, the

Court finds that it does not have jurisdiction over plaintiff's FTCA claim challenging his placement in the transitional unit.

### *2. Privacy Act*

Defendant United States also argues, on behalf of the unnamed BOP official plaintiff claims violated the Privacy Act by disseminating his grievance, that plaintiff's Privacy Act claim must be dismissed because the BOP has exempted its Inmate Administrative Remedy System from civil actions under the statute. The magistrate judge agreed with this argument and recommended dismissal of this claim. Plaintiff now objects, but only to the magistrate judge's refusal to allow him discovery into the identity of the BOP official who allegedly disseminated the grievance. *See* Docket No. 58 at 4-5. Because plaintiff has no civil claim under the statute regardless of who disseminated the grievance, plaintiff's discovery requests seek information which is not relevant. The Court will therefore dismiss this claim.

### B. Claim Two

Plaintiff's second claim alleges that defendant Wiley violated plaintiff's Eighth Amendment rights by placing him in the transitional unit, thereby failing to protect him from assault.[2] Plaintiff claims that after his unredacted grievance was disseminated, plaintiff requested an investigation. Lieutenant Bier then informed plaintiff that his grievance had been given to an Aryan Brotherhood member by way of a Freedom of Information Act request. Plaintiff alleges that this Aryan Brotherhood member who

---

[2] Plaintiff's complaint also includes a claim against the unknown officer who disseminated his complaint. *See* Docket No. 13 at 10. The magistrate judge recommended dismissal of this claim, *see* Docket No. 57 at 18 n.6, and plaintiff does not object to this recommendation. *See* Docket No. 58 at 5-9.

received the grievance "is always looking to find 'snitches' within his unit." Docket No. 13 at 7. Plaintiff expressed a concern for his physical safety to Bier, who offered to have plaintiff transferred to a different range or to move prisoners plaintiff believed were a threat to his safety, but plaintiff declined out of a concern that these actions would only attract more attention to him. Plaintiff was then transferred to the transitional unit, where he was attacked four months later. Plaintiff asked Bier after the incident whether the attack was a result of the grievance and Bier told plaintiff he believed that it was.

"Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). In order to state an Eighth Amendment claim for failure to protect, plaintiff must allege both that "he is incarcerated under conditions posing a substantial risk of serious harm, the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2001) (quoting *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001)). Defendant Wiley argues that plaintiff's alleged facts cannot meet the subjective component because he does not allege that Wiley actually knew that placing plaintiff in the transitional unit would expose him to any specific harm. The magistrate judge agreed that plaintiff's allegations of Wiley's knowledge were inadequate. Plaintiff now objects, arguing that Wiley knew about the danger to plaintiff from Aryan Brotherhood members.

In his complaint, plaintiff alleges that Wiley "knew or should have known" of the risk plaintiff faced from Aryan Brotherhood members in the transitional unit. *See* Docket No. 13 at 11. To state a claim under the Eighth Amendment, plaintiff must allege that defendant Wiley actually knew of this risk; it is insufficient to allege that he

7

should have known the risk.  *See Verdecia*, 327 F.3d at 1175.  Plaintiff does allege that he complained to Wiley "in writing and verbally," Docket No. 13 at 11, but the complaint does not indicate what he complained about, nor does plaintiff allege that Wiley had any reason to believe that the transitional unit would be a particularly dangerous place for plaintiff.  As Wiley points out in his motion to dismiss, *see* Docket No. 38 at 2, although plaintiff alleges that his grievance was given to a "known member of the Aryan Brotherhood," *see* Docket No. 13 at 6 ¶ 11, he does not allege that the Aryan Brotherhood member was connected to the inmate who allegedly assaulted him.  He does not allege that the member who received the grievance shared this information with the inmate who assaulted him or that the inmate who assaulted him had any knowledge of the grievance.  Ultimately, plaintiff does not allege sufficient facts to support an inference that Wiley was actually aware of a specific risk to plaintiff's safety from Aryan Brotherhood members in the transitional unit and, therefore, does not allege sufficient facts to state a claim for failure to protect under the Eighth Amendment. *Compare Smith v. Freil*, 170 F. App'x 580, 583 (10th Cir. 2006) (plaintiff alleged sufficient facts supporting deliberate indifference where defendants were aware of risk to informant's safety and directly participated in placing him in housing assignment where he was attacked).

In response to the defendants' motions to dismiss, plaintiff filed a declaration stating that he specifically informed Wiley in several face-to-face conversations of the danger he faced from members of the Aryan Brotherhood housed in the transitional unit and that the individual who attacked him was an Aryan Brotherhood member.  *See*

Docket No. 55. The Court, however, is bound to assess the "sufficiency of the allegations within the four corners of the complaint" and thus cannot rely on the more detailed factual recitation of the events provided in plaintiff's declaration. *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); *Nichols v. Federal Bureau of Prisons*, Civil Action No. 09-cv-00558-CMA-CBS, 2010 WL 3219998 at *5 (D. Colo. Aug. 12, 2010) (pro se plaintiff may not bolster his claim with later filings in order to survive 12(b)(6) motion). However, in light of such detailed declarations, the Court will allow plaintiff to file an amended complaint adding such allegations to plaintiff's second claim.

### C. Claim Three

Plaintiff's third claim challenges the conditions of his confinement under the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350, and the Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350. The magistrate judge recommended dismissal of both plaintiff's TVPA and ATCA claims. Plaintiff does not object to the dismissal of his TVPA claim, but he does object to the dismissal of his ATCA claim. *See* Docket No. 58 at 9. The ATCA applies "when (1) an alien sues, (2) for a tort, (3) that was committed in violation of the 'law of nations' or a treaty of the United States." *Kyler v. Montezuma County*, 2000 WL 93996, *1 (10th Cir. Jan. 28, 2000). The Court agrees with the magistrate judge that plaintiff has failed to allege any tort in relation to his placement at ADX or the conditions of his confinement there and that dismissal of this claim is appropriate. *See also Ajaj v. Federal Bureau of Prisons*, Civil Action No. 08-cv-02006-MSK-MJW, 2011 WL 902440 at *8 n.9 (D. Colo. Mar. 10, 2011) (summarily dismissing similar claims under the ATCA).

### D. Claim Four

Plaintiff's fourth claim challenges the mishandling of his mail. The magistrate judge recommended dismissal of this claim insofar as it sought money damages under *Bivens*, on the grounds that the Supreme Court has not yet recognized First Amendment *Bivens* claims. Plaintiff does not object to this portion of the recommendation. *See* Docket No. 58 at 10. He does object, however, to the dismissal of his claim for injunctive relief based on the ongoing mishandling of his mail. Defendants Revell, Wiley, and Herman argue that plaintiff's allegations as to the mishandling of his mail are insufficient to state a First Amendment claim. The magistrate judge agreed, reasoning that the allegations were only conclusory and did not identify any particular piece of mail that was lost, destroyed, or delayed.

The First Amendment protects a prisoner's right to receive and send mail. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Turner v. Safley*, 482 U.S. 78 (1987). Prison officials may regulate that right, however, as long as the regulation is "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. The Court agrees that plaintiff's allegations regarding a "secret" policy of destroying plaintiff's mail are insufficient to state a claim for a First Amendment violation absent an allegation that his mail was actually destroyed.

However, the Court finds that plaintiff's allegations regarding the long delay of his mail are sufficient to state such First Amendment claim. Plaintiff alleges that Warden Wiley and Warden Revell issued memos directing that plaintiff's incoming and outgoing mail be sent to Washington D.C., resulting in a delay of up to four to six months before

receipt. *See* Docket No. 13 at 14. Although the magistrate judge is correct that "[n]ot every instance of delayed mail amounts to a constitutional violation," *see* Docket No. 57 at 24, plaintiff alleges that his mail is routinely delayed for many months. *Compare Gee v. Pacheco*, 627 F.3d 1178, 1190 (10th Cir. 2010) ("brief delays in mailing" insufficient to create First Amendment violation); *Bruscino v. Pugh*, 232 F. App'x 763, 766 (10th Cir. 2007) ("three-week delay in mail delivery, without any indication of improper motive, did not rise to the level of a constitutional violation"); *Payne v. Werholtz*, 2010 WL 4103000 (D. Kan. Oct. 18, 2010) (two week delay insufficient to state a claim); *with Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996) (allegation that mail delivery was delayed for an inordinate amount of time sufficient to state a First Amendment claim). This long delay, alleged to be the result of a direct policy set by defendants Wiley and Revell, is sufficient to state a First Amendment claim for injunctive relief. Although defendants may have a valid penological interest in maintaining this policy, plaintiff alleges that this delay was "unjustified" and the Court must accept this allegation as true at this stage in the proceedings.[3] *See Thornburgh*, 490 U.S. at 407.

Although plaintiff has stated a claim against Wiley and Revell, he has not stated a claim against Inmate Systems Officer Herman, who he does not allege was responsible for the policy of sending plaintiff's mail to Washington. Plaintiff vaguely alleges that Herman "subjected plaintiff's mail to long delays" and was involved in the

---

[3] The Court must also accept as true the allegation that plaintiff's mail is delayed, despite the magistrate judge's observation that plaintiff's complaint was mailed on March 17, 2010 and received by the Court on March 19, 2010. *See* Docket No. 57 at 24. That the policy of sending plaintiff's mail to Washington was not applied to the plaintiff's complaint in this case does not necessarily foreclose its application to non-legal mail.

"secret" policy of destroying his mail. *See* Docket No. 13 at 14. These allegations are insufficient to state a claim against defendant Herman. Therefore, the Court will dismiss claim four as to defendant Herman, but not as to defendants Wiley and Revell.

Nonetheless, although the Court finds that plaintiff has stated a claim regarding the mail policy at ADX, it is not clear that plaintiff remains subject to this policy since his transfer to USP Marion. *See* Docket No. 60. If plaintiff is no longer subject to such mail restrictions and given that he is only seeking prospective injunctive relief, his fourth claim may be moot. Therefore, the Court will order plaintiff to show cause why his fourth claim should not be dismissed as moot.

### E. Claim Five

Plaintiff's fifth claim alleges that defendants Wiley and Collins violated his Eighth Amendment rights by denying him access to outside recreation for 90 days. Wiley and Collins argue that plaintiff does not allege a sufficiently serious deprivation to implicate the Eighth Amendment and the magistrate judge agrees. Plaintiff's objection states that he agrees with the magistrate judge that he was not completely deprived of exercise, but that the magistrate did not address his allegation that he was denied outdoor recreation without due process in contravention of BOP policy. *See* Docket No. 58 at 4. The Court agrees that the denial of outdoor exercise for 90 days does not implicate the Eighth Amendment. *See Ajaj v. United States*, 293 F. App'x 575, 584 (10th Cir. 2008) (denial of outdoor recreation for a year not sufficiently serious to implicate the Eighth Amendment). The Court also finds that plaintiff does not have a liberty interest in his right to outdoor exercise so as to trigger an entitlement to due process. *See generally*

*Saleh v. Federal Bureau of Prisons*, 2010 WL 5464294, Civil Action Nos. 05-cv-02467-PAB-KLM, 06-cv-01747-PAB-KLM, 07-cv-00021-PAB-KLM (D. Colo. Dec. 29, 2010). Therefore, the Court will dismiss claim five.

### F. Claim Six

Plaintiff's sixth claim alleges that defendant Brean violated his Eighth Amendment rights by pulling plaintiff's hand behind his back in 2009 and verbally assaulting plaintiff in 2008. Defendant Brean argues that plaintiff's allegations are insufficient to state a claim because plaintiff does not sufficiently allege that he suffered more than a de minimis injury or that defendant Brean had the requisite culpable state of mind. "Ordinarily, an excessive force claim [under the Eighth Amendment] involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials act[ed] with a sufficiently culpable state of mind." *See Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (quotations omitted). The magistrate judge found that plaintiff failed to allege sufficient facts to meet the objective prong for either the 2009 or 2008 incidents. The Court agrees.

First, plaintiff alleges that in 2009, after he was taken to the nurse's room to have stitches removed from his face, he "inquired into after care and without warning officer Brean pulled plaintiff's hand behind his back causing him severe back pain." Docket No. 13 at 16. These allegations are insufficient "to show wrongdoing that was objectively harmful enough to establish a constitutional violation." *Marshall v. Milyard*, 2011 WL 285563 at *2 (10th Cir. Jan. 31, 2011) (quotation omitted). Even if officer

Bream acted malevolently by pulling plaintiff's hand behind his back, this force was both de minimis "and not of a nature that is repugnant to mankind." *Id.* (holding allegation that officer grabbed plaintiff's "arm and dug his fingernails into it, resulting in an injury" was insufficient). Plaintiff has therefore failed to state an Eighth Amendment claim as to the 2009 incident.

Second, plaintiff alleges that in 2008, Brean "verbally assaulted plaintiff by threat[en]ing him repeatedly when he gathers food trays and when plaintiff prays." Docket No. 13 at 17. The Court also finds that this alleged verbal abuse fails to satisfy the objective requirement of an excessive force claim. Plaintiff does not allege that Brean threatened "terror of instant and unexpected death" such that his words rose above the level of idle "verbal threats and harassment" that are generally not cognizable as an Eighth Amendment injury. *See Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992) (quoting *Burton v. Livingston*, 791 F. 2d 97, 100 (8th Cir. 1986)). Therefore, the Court will dismiss plaintiff's sixth claim.

### G. Claim Eight

Plaintiff's eighth claim alleges that defendant Herman violated his First Amendment rights by destroying all but five of his books upon his transfer to the transitional unit without allowing him to choose which books to keep. The magistrate judge recommended dismissal of this claim to the extent it seeks monetary relief under *Bivens* and plaintiff does not object to this recommendation. *See* Docket No. 58 at 12. However, plaintiff does object to the dismissal of this claim insofar as it seeks injunctive relief. The Court agrees with the magistrate judge that plaintiff does not allege an

ongoing injury so as to state a claim for injunctive relief.  Although plaintiff argues that the "five books" policy is still in effect at ADX, nothing in plaintiff's complaint suggests he is likely to be subject to this policy again.  *See Lippoldt v. Cole*, 468 F.3d 1204, 1217 (10th Cir. 2006) ("Plaintiffs seeking prospective relief must show more than past harm or speculative future harm.") (quotation omitted).  Therefore, the Court will dismiss plaintiff's eighth claim.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 57] is **ACCEPTED** in part and **OVERRULED** in part, as stated herein.  It is further

**ORDERED** that the Motion to Dismiss of Defendant United States [Docket No. 34] is **GRANTED**.  It is further

**ORDERED** that the Motion to Dismiss of Defendant Revell [Docket No. 35] is **GRANTED** in part and **DENIED** in part.  Plaintiff's fourth claim against defendant Revell for violation of his First Amendment rights shall not be dismissed.  It is further

**ORDERED** that the Motion to Dismiss of Defendant Krist [Docket No. 36] is **GRANTED**.  It is further

**ORDERED** that the Motion to Dismiss of Defendant Brean [Docket No. 37] is **GRANTED**.  It is further

**ORDERED** that the Motion to Dismiss of Defendant Wiley [Docket No. 38] is **GRANTED** in part and **DENIED** in part.  Plaintiff's fourth claim against defendant Wiley for violation of his First Amendment rights shall not be dismissed.  It is further

**ORDERED** that the Motion to Dismiss of Defendant Collins [Docket No. 39] is **GRANTED**.  It is further

**ORDERED** that the Motion to Dismiss of Defendant Herman [Docket No. 40] is **GRANTED**.  It is further

**ORDERED** that on or before **August 5, 2011**, plaintiff shall show cause why his fourth claim should not be dismissed as moot.  Plaintiff shall advise the Court whether he continues to be subject to the challenged policy regarding his mail at USP Marion.  It Is further

**ORDERED** that plaintiff is granted leave to file an amended complaint as to Claim Two.  Plaintiff shall file his amended complaint by **August 5, 2011.**


DATED July 8, 2011.

            BY THE COURT:

            s/Philip A. Brimmer
            PHILIP A. BRIMMER
            United States District Judge