IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-02563-PAB-KLM

MOHAMMED SALEH,

     Plaintiff,

v.

RON WILEY, in his Individual Capacity,

     Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendant's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies** [Docket No. 87; Filed December 15, 2011] (the "Motion").  The Motion is referred to this Court for recommendation. [#89].  The Motion is fully briefed and ripe for resolution.  The Court has reviewed the Motion, the briefing, the case record, and the applicable law, and is fully advised in the premises.  For the reasons set forth below, the Court respectfully recommends that the Motion be **GRANTED**.

## I.  Background

The Court incorporates by reference the case background stated in the Recommendation issued June 12, 2012.  [#99].  In the instant Motion, Defendant Wiley asserts that Plaintiff did not mention him or refer to his conduct in the administrative remedy grievances that Plaintiff filed related to the facts giving rise to this lawsuit, thus Plaintiff

failed to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA").  *See* [#87].  Defendant Wiley contends that Plaintiff filed only one grievance relating to the altercation giving rise to the allegations in this lawsuit, and the content of that grievance was inadequate to provide sufficient notice of Plaintiff's complaint against Defendant Wiley.  *Id.* at 13.  Plaintiff disagrees, and avers that the relevant grievance provided enough information to alert the prison as to the nature of his problem, and that he need not have specifically identified Defendant Wiley in the grievance.  [#92] at 12.  For the reasons stated below, the Court concludes that the PLRA's exhaustion requirement must be strictly construed, and Plaintiff's grievance did not provide enough information to exhaust his claim against Defendant Wiley.

## II.  Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Under Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986).  A fact is material if it might affect the outcome of the case under the governing substantive law.  *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323).  When the movant does not bear the ultimate burden of persuasion at

trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671.  If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor.  *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324).  Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).   The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded.  *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

### III.  Statement of Undisputed Material Facts

The below Statement of Undisputed Facts is taken in large part from Defendant's Statement proffered in the Motion, with the exception of facts deemed by the Court to be immaterial.   The Court states the facts as presented by Defendant that are explicitly undisputed by Plaintiff, and vice versa.   Regarding the disputed facts, those which the Court accepts or modifies are noted as needed.  Based on the record before the Court, the

Court recommends that the following facts be accepted as material and undisputed:

1. Plaintiff, an inmate in the custody of the Federal Bureau of Prisons ("BOP"), was incarcerated in the United States Penitentiary, Administrative Maximum ("ADX") in Florence, Colorado, from February 5, 2003 to May 13, 2008, and from September 25, 2008 to April 27, 2011.  *See Decl. of Mark Collins* ("Collins Decl."), [#87-1] at ¶ 5; Inmate History Quarters, [#87-2]; *2d Am. Compl.*, [#75] at ¶ 4.

2. Plaintiff was incarcerated in the D/B Unit from May 13, 2008 until September 25, 2008.  The D/B Unit, while physically located at the United States Penitentiary in Florence, is part of the ADX Step-Down program.  *Decl. of Mohammed Saleh* ("Saleh Decl."), [#92-1] at ¶ 2.

3. Defendant Wiley was the Warden of the ADX from May 1, 2005, to October 7, 2009. Collins Decl., [#87-1] at ¶ 6.

4. On or about November 30, 2006, Plaintiff submitted an administrative remedy request complaining about a disruptive inmate in Plaintiff's housing unit.  *Id.* at ¶ 19. Plaintiff's complaint involved a number of noisy inmates who Plaintiff believed to be mentally ill.  Saleh Decl., [#92-1] at ¶ 4.

5. The BOP assigned Plaintiff's request Remedy ID # 435296.  Collins Decl., [#87-1] at ¶ 19.

6. At the time when Plaintiff submitted his November 2006 administrative remedy request complaining of the constant noise on his housing range, he was confined in D-Unit, an ADX general population unit.  Saleh Decl., [#92-1] at ¶ 4.

7. In D-Unit, Plaintiff had no opportunity to congregate with other prisoners.  *Id.* at ¶ 3.

4

8. In April 2007, Plaintiff was admitted to the ADX Step-Down program and transferred to J-Unit. *Id.* at ¶ 5.

9. In J-Unit, Plaintiff was allowed to congregate with three to four other prisoners and during indoor recreation. *Id.*

10. Plaintiff first knew of the threat to his safety in July 2007 when he learned that ADX staff had distributed unredacted copies of the BOP's response to his November 2006 Remedy ID #435296 regarding noise to another inmate, a member of the Aryan Brotherhood ("AB"). *Id.* at ¶¶ 6-7; Collins Decl., [#87-1] at ¶ 20.

11. The inmate who received a copy of the response disseminated other copies to other prisoners at ADX, including other AB members.  Saleh Decl., [#92-1] at ¶ 7.

12. The response included Plaintiff's name and register number.  *Id.* at ¶ 6.

13. After the response was disseminated, Plaintiff was labeled a "snitch" and placed in risk of serious harm.  *Id.* at ¶ 8.

14. On July 7, 2007, Plaintiff wrote Defendant Wiley a letter, requesting an investigation of the dissemination of the administrative remedy response to the inmate. *Id.* at ¶ 9.

15. The dissemination of the response was investigated by ADX Special Investigative Services ("SIS") personnel.  *Id.* at ¶¶ 11, 12.

16. In August 2007, Mr. Wiley had a verbal discussion with Plaintiff concerning the results of the investigation.  *Id.* at ¶ 13.

17. After the initial investigation into the dissemination of his administrative remedy response, Plaintiff no longer felt that his life and safety were threatened in J-Unit and K-Unit at ADX.  *Id.* at ¶ 14.

18. On May 13, 2008, Plaintiff was admitted to the final phase of the ADX Step-Down program for general population unit inmates and moved to the Pre-Transfer Unit ("D/B Unit"), located at the United States Penitentiary in Florence. *Id.* at ¶ 14; *see also* Inmate History Quarters, [#87-2] at 2.

19. When Plaintiff was transferred from K-Unit to the D/B Unit in May 2008, he learned that there were several AB members in D/B Unit who had a copy of the administrative response to his November 2006 Remedy ID #435296 regarding noise. Saleh Decl., [#92-1] at ¶¶ 14-15.

20. Plaintiff again felt that his life and safety were at risk of danger and took steps to notify Defendant Wiley. *Id.* at ¶ 16.

21. During Defendant Wiley's weekly rounds in D/B Unit, Plaintiff verbally told Defendant Wiley that he believed his safety was threatened and requested that he be moved out of D/B Unit. *Id.*; *see also* [#75] at ¶ 35.

22. Defendant Wiley ignored Plaintiff's requests for protection and did not take any steps to ensure Plaintiff's safety in D/B Unit. *Id.* at ¶¶ 16, 20.

23. On September 25, 2008, Plaintiff was seriously injured when an AB member housed in D/B Unit attacked him with a sharp object that cut Plaintiff's neck and face. *Id.* at ¶ 17; *see also* [#75] at ¶¶ 39-40.

24. After the attack, Plaintiff was taken to the hospital where he received seven stitches. *Id.* at ¶ 18.

25. After returning from the hospital, Plaintiff received an incident report for fighting and was removed from the Step-Down program and placed in the Special Housing Unit (SHU) of ADX. *Id.* at ¶ 21; *see also* Collins Decl., [#87-1] at ¶ 38.

26. Plaintiff's claim in the Second Amended Complaint is that Defendant Wiley failed to protect him from the altercation that occurred in D/B Unit on September 25, 2008. [#75] at ¶¶ 57-59.

27. Pursuant to the BOP grievance policy in effect, an inmate must grieve any alleged injuries by pursuing a four-step process: (1) the inmate must attempt informal resolution with his unit team at the institution level; (2) after receiving a response, the inmate must appeal the response to the Warden; (3) upon completion of the Warden's review, the inmate must appeal to the Regional Director; and (4) finally, the inmate fully exhausts his administrative remedies by appealing the Regional Director's decision to the Director, National Inmate Appeals, in the Office of the General Counsel in Washington, D.C.  Collins Decl., [#87-1] at ¶¶ 7-12.

28. The BOP database called SENTRY allows the BOP to track an inmate's administrative remedy requests and related appeals.  *Id.* at ¶ 13.

29. The SENTRY Administrative Remedy Generalized Retrieval Index, also known as the "Administrative Remedy Log," contains information about all administrative remedies filed by a particular inmate, including the facility where the request was filed, the date filed, a short statement of the inmate's complaint, and the status of the filing.  *Id.* at ¶¶ 14, 16; *see also* Administrative Remedy Log for Plaintiff, [#87-3].

30. Each complaint is logged into SENTRY at the location where it is received.  *Id.* at ¶ 13.

31. If the complaint is an initial filing, it is assigned a unique "Remedy ID Number" upon initial entry, which will follow the complaint throughout the appeal process.  *Id.*

32. Each "Remedy ID Number" also contains an explanation, or "extension," that

identifies the level of review.  *Id.*

33. The extension "F-1" indicates the complaint was filed at the institution level; "R-1" indicates the complaint or appeal was filed at the regional level; and "A-1" indicates the appeal was filed at the national level.  *Id.*

34. Prior to the September 25, 2008 attack on Plaintiff, Plaintiff attempted to informally resolve his complaints regarding the threats to his safety, fear for his safety, and the dissemination of the administrative response to Remedy ID #435296 on several occasions by writing and talking to Defendant Wiley.  Saleh Decl., [#92-1] at ¶¶ 9, 13, 16.

35. During the period from July 1, 2007 (the approximate date on which Plaintiff learned that the response to his administrative remedy request was given to another inmate) through September 25, 2008 (the date of the altercation in D/B Unit), Plaintiff submitted seven administrative remedy requests; however, none of these administrative remedies raised any issue concerning the dissemination of the administrative remedy response, Plaintiff's alleged fear for his safety, or Defendant Wiley's alleged failure to protect Plaintiff.  Collins Decl., [#87-1] at ¶¶ 23-25.

36. After the incident in D/B Unit on September 25, 2008, Plaintiff began the administrative remedy process by filing an informal resolution form on October 19, 2008. Saleh Decl., [#92-1] at ¶ 22.  The content of the form is as follows (any errors exist in the original):

> My complain is I have been punished for exercising my right in the court and the conspiracy by certain staff to bring me back to ADX was clear from the begining by staging of a kind of assualt on me and punish me for filing a law suit in court. . . . I complain about the way the staff treating me to the AW's. . . . [Expected resolution is] to stop all kind of violation of my due process and stop this cruel and punishment treatment in ADX.

[#87-4] at 5.

37. Plaintiff then filed the next-level administrative remedy request, dated November 1, 2008 and received by the BOP on November 3, 2008, which the BOP designated as Remedy ID #516181. *Id.* at ¶ 23; Collins Decl., [#87-1] at ¶ 26; Remedy document, [#87-4]. Remedy ID #516181 reads as follows (any errors exist in the original):

> My complain I was removed from the step-down unit D/B at USP and brought back to ADX without any due process, which confirm that prison official are retaliated against me for exercising my constitutional right and caused me to get harmed and injuries as punishment. The prison officials by creating segregated unit like D/B, such conditions of incarceration posed a substial risk of serious harm and the officials acted with deliberate indifference to any risk can happen for those reason's prison official's failed their official duty by not providing the prisoners with safe environment, and for that they are responsible under eighth amendment for failure to protect claim and in violation of equal protection clause for the above mentioned violations. I demand a complete investigation in these matters. And restore my rights.

[#87-4] at 4.

38. Plaintiff pursued Remedy ID #516181 through all levels of the BOP's administrative remedy review process. *See* Collins Decl., [#87-1] at ¶ 10; Saleh Decl., [#92-1] at ¶ 23.

39. The appeal of Remedy ID #516181 to the Regional Director, dated December 23, 2008, states as follows (any errors exist in the original):

> My appeal for the same reason for the Regional director about removing me from the step-down unit D/B without any procedural due process, which confirmed that some prison officials are conspiring against me and retaliating because of my exercise of my constitutional right & caused me to get harmed & injuries, as punishment and claims they determine the removal on case by case basis!! The prison officials by creating segregated unit like D/B, such conditions of incarceration posed a substantial risk of serious harm on me & other's and the officials acted with deliberate indifference to my safety and other's. And the prison officials failed their duty by not providing the prisoners with a safe environment and for these reasons they are responsible under the eighth amendment for failure to protect claim and in violation of

> Equal Protection Clause.  I demand that my rights to be restore & to stop
> these violation.

[#87-4] at 8.

40. The appeal of Remedy ID #516181 to the National Inmate Appeals office, dated

February 26, 2009, states as follows (any errors exist in the original):

> My appeal for the General Counsel office for the same reason about
> removing me from the step-down unit D/B without any procedural due
> process, which confirmed that some prison officials are conspiring against
> me and retaliating because of me exercing my constitutional right and caused
> me to get harmed and injuries.  As punishment, the claim that the removal is
> decided on a case by case basis is nonsense!  The prison officials by
> creating segregated unit such as D/B creates conditions posed risk of serious
> harm on me & others and the officials acted with deliberate indifference to my
> safety & others and they failed their duty by not providing us with a safe
> environment and for that they are responsible under the eight amend. for
> failure to protect & equal protection clause for discrimination.  I demand my
> rights be restored and to stop these violations.

[#87-4] at 11.

41. Remedy ID #516181 and the appeals do not identify Defendant Wiley, do not

reference the conversations Plaintiff states that he had with Defendant Wiley regarding his

concerns, and do not mention the dissemination of the November 2006 Remedy ID

#435296.  Statement of Undisputed Material Facts ("Facts"), *supra* ¶¶ 37, 38, 40, 41.

42. Remedy ID #516181 and the appeals refer to "prison officials" who, "by creating

segregated unit like D/B" created objectionable conditions.  *Id.*

43. Defendant Wiley was involved in the development and implementation of the

plan to create the D/B Unit, and he was consulted prior to any inmate's transfer into the D/B

Unit, including Plaintiff's transfer.  Dep. Tr. of Wiley ("Wiley Dep."), July 29, 2008, [#92-2]

at 122:13-16, 124:6-8, 146:9-147:19.

44. Plaintiff did not specifically name Defendant Wiley in the administrative remedy

10

request because he feared retaliation for doing so.  Saleh Decl., [#92-1] at ¶ 24.

45. Plaintiff feared that Defendant Wiley would not allow Plaintiff to progress through the Step-Down program if Plaintiff specifically named Defendant Wiley in his administrative remedy request.  Saleh Decl., [#92-1] at ¶ 24.

46. Defendant Wiley had the authority to admit or deny Plaintiff placement in the ADX Step-Down program.  Wiley Dep., [#92-2] at 122:13-16.

47. While Defendant Wiley was the ADX Warden, Plaintiff completed the first two phases of the ADX Step-Down program and was in the final phase of the program at the time of the September 25, 2008 altercation.  *See* [#75] at ¶ 14; Saleh Decl., [#92-1] at ¶¶ 5, 14, 15 (referencing participating in various phases of the step-down program).

48.  Defendant Wiley responded to Plaintiff's institution level Remedy ID #516181-F1.  [#87-4] at 6.  Defendant Wiley construed Plaintiff's request as challenging his removal from the D/B Unit.  *Id.*  Defendant Wiley referred to the incident report Plaintiff received for "Fighting with Another Person," which resulted from the incident on September 25, 2008. *Id.*  Defendant Wiley explained that Plaintiff's conduct underlying the incident report justified his transfer to ADX.  *Id.*

49.  The Regional Director and National Inmate Appeals' responses to Plaintiff's appeals related to Remedy #516181 state that the BOP's conclusion was that no procedures were violated when Plaintiff was removed from the ADX Step-Down program and D/B Unit after the September 25, 2008 altercation.  *Id.* at 9 (Regional Director), 12 (National Inmate Appeals).

50. It is the BOP's practice for Special Investigative Services ("SIS") personnel to conduct a formal investigation of an inmate's claim that a prison official ignored known

threats to an inmate's safety, and SIS did not conduct an investigation of Defendant Wiley as a result of Remedy #516181.  Collins Decl., [#87-1] at ¶ 36.

51. Plaintiff filed four administrative remedies related to Remedy ID #516181, which asserted that his procedural due process rights were violated in connection with the imposition of the incident report against Plaintiff, resulting from the September 25, 2008 altercation.  *Id.* at ¶¶ 38-39.

52. In one of the subsequent administrative remedies, Remedy ID #516750, Plaintiff asked to be returned to the D/B Unit in the Step-Down program, which was the location of the September 25, 2008 altercation.  *Id.* at ¶ 39 (citing [#87-5]).

53. No other administrative remedies that Plaintiff filed after September 25, 2008, and while he was incarcerated at the ADX, assert a claim against Defendant Wiley for failing to protect Plaintiff.  *Id.* at ¶ 40.

54. No other administrative remedies that Plaintiff filed after his transfer to USP Marion assert a claim against Defendant Wiley for failing to protect Plaintiff.  *Id.* at ¶ 41.

## IV.  Analysis

The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, requires that a claim regarding prison conditions must first be exhausted before a prisoner may challenge those conditions by filing suit.  *Porter v. Nussle*, 534 U.S. 516, 520 (2002) ("1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences.").  Specifically, the exhaustion provision states:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). However, the burden is not on Plaintiff to sufficiently plead exhaustion or attach exhibits to his Second Amended Complaint proving exhaustion. *Jones*, 549 U.S. at 215. Rather, the burden is on Defendant to assert the failure to exhaust in a dispositive motion. Here, Defendant's failure to exhaust defense is analyzed pursuant to Fed. R. Civ. P. 56. As such, if the evidence presented does not create a genuine issue in Plaintiff's favor as to whether his claim against Defendant Wiley was properly exhausted, the Second Amended Complaint must be dismissed without prejudice. *Arocho v. Lappin*, No. 07-cv-02603-REB-KLM, 2011 WL 2292187, at *8 (D. Colo. Apr. 21, 2011) (citing *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007) (noting that dismissal of unexhausted claims on summary judgment should be without prejudice); *cf. Kikumura v. Osagie*, 461 F.3d 1269, 1290 (10th Cir. 2006) (recognizing that dismissal of untimely grievance should be with prejudice), *overruled in part on other grounds as recognized in Robbins v. Oklahoma*, 519 F.3d 1242, 1246-47 (10th Cir. 2008).

The prison facility is tasked with the responsibility of establishing grievance procedures. *Jones*, 549 U.S. at 218 ("[I]t is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion."). "Compliance with prison grievance procedures, therefore, is all that is required by PLRA to 'properly exhaust.'" *Baldauf v. Garoutte*, No. 03-cv-01104, 2007 WL 2697445, at *4 (D. Colo. Sept. 11, 2007) (unpublished decision) (citation omitted). Relevant to the instant matter, "the regulations

13

governing the BOP's administrative remedy program do not specify the kind of information needed in a grievance." *Kikumura*, 461 F.3d at 1282.  Thus, the Tenth Circuit has determined "that a grievance will satisfy the exhaustion requirement so long as it is not so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally."  461 F.3d at 1283 (citation and internal quotations omitted).  The *Kikumura* court noted considerations that inmates typically file grievances *pro se*, and under restrictions of time, length of statement, and inability to perform an adequate preliminary investigation. *Id.* at 1284.  Further, the court explicitly rejected the suggestion that prisoners must "specifically identify the wrongdoers in their initial grievance." *Id.*

Whether a prisoner plaintiff has exhausted prisoner administrative remedies is a matter of law for the Court to decide. *E.g.*, *Feuer v. McCollum*, 129 F. App'x 928, 931 (10th Cir. 2005) (recognizing issue before the trial court related to prisoner's exhaustion of available administrative remedies as a question of law); *see also Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010) ("exhaustion of administrative remedies under the PLRA is a question of law to be determined by the judge").  Applying the above-stated legal principles to the instant Motion, the Court must determine whether the content of Plaintiff's grievance related to the lawsuit at issue "provide[d] prison officials with enough information to investigate and address the inmate's complaint internally." *Kikumura*, 461 F.3d at 1285; *see also Green v. Fed. Bureau of Prisons*, No. 07-cv-01011-DME-MEH, 2009 WL 150650, at *7 (D. Colo. Jan. 21, 2009) ("An inmate's duty to exhaust his administrative proceedings is, therefore, fulfilled when the officials are given adequate notice of the nature of his complaint.").

14

As stated above, Defendant Wiley asserts that Plaintiff has not exhausted administrative remedies as to the claim against him, because the content of Plaintiff's grievance related to the incident giving rise to this lawsuit did not provide adequate notice of Plaintiff's complaint. *See* [#87] at 13. In opposition, Plaintiff suggests that the course of conduct between Plaintiff and Defendant Wiley was enough to provide adequate notice of the claim against Defendant Wiley: "Given that Defendant Wiley was informed of the threat to Plaintiff's safety over a year prior to the attack and Plaintiff had multiple conversations with Defendant Wiley about the threats to his safety, including at least two in the months prior to the attack, Defendant Wiley cannot credibly argue that he was not afforded sufficient notice of the factual circumstances surrounding Plaintiff's complaint when he received Plaintiff's institution level remedy in November 2008." [#92] at 14-15.

Plaintiff's argument is flawed for the following reasons. Plaintiff, in essence, asks the Court to apply a totality-of-the-circumstances test to evaluate the adequacy of his efforts to exhaust his administrative remedies. However, Plaintiff provides no legal authority for this approach, and the Court's own research reveals minimal employment of this standard to a PLRA exhaustion question. *See, e.g., Womack v. Smith*, No. 1:06-cv-2348, 2011 WL 819558, at *9 (M.D. Pa. Mar. 2, 2011) (looking to the totality of the circumstances, including illiteracy, ambulatory restraints, and continued isolation, in determining whether an inmate timely filed a grievance pursuant to the PLRA); *Allah v. Virginia*, No. 2:10cv00075, 2011 WL 251214, at *5 (W.D. Va. Jan. 25, 2011) (looking to the totality of the circumstances to find that the inmate correctly followed the facility's grievance filing procedures); *Hicks v. Ballard*, No. 2:08-cv-01365, 2010 WL 2787811, at *10-11 (S.D. W. Va. June 18, 2010) (rejecting totality-of-the-circumstances argument and finding that

inmate did not demonstrate futility of filing grievance requests as required by the PLRA); *Kennedy v. Nunnaly*, No. 4:08-0146-PMD-TER, 2009 WL 778708, at \*4 (D.S.C. 2009) (recognizing a totality-of-the-circumstances evaluation as appropriate for determining whether the facility responded to a grievance quickly enough).

Further, courts have declined to apply the approach propounded by Plaintiff, that is, looking outside of the four corners of a grievance to determine its adequacy, when adjudicating a PLRA exhaustion defense where the inmate participated in an internal investigation conducted by the prison facility, as Plaintiff did here with regards to the aftermath of the disclosure of his noise grievance.  *See* Facts, *supra* ¶¶ 14-17.  For example, in *Pavey v. Conley*, the Seventh Circuit evaluated a case in which the inmate plaintiff asserted that he "accomplished the same objective [of initiating the grievance process] by participating in an internal-affairs investigation."  663 F.3d 899, 905 (7th Cir. 2011).  The *Pavey* court looked to the Sixth and Ninth Circuits' holdings that "an internal-affairs investigation is no substitute for an available grievance process."  663 F.3d at 905 (citing *Panaro v. City of N. Las Vegas*, 432 F.3d 949, 953 (9th Cir. 2005); *Thomas v. Woolum*, 337 F.3d 720, 734 (6th Cir. 2003), abrogated on other grounds by *Woodford*, 548 U.S. at 87).  The *Pavey* court recited Supreme Court precedent "reject[ing] any suggestion that prisoners are permitted to pick and choose how to present their concerns to prison officials."  *Id.* at 905-06 (citing *Woodford*, 548 U.S. at 95).

Applying the above-stated determinations to the instant matter, the Court finds that Plaintiff's efforts to notify prison officials of his concerns do not meet the requirements of the PLRA.  Plaintiff may not side-step the requirements of the grievance process by relying on conversations with a single employee of the BOP as a basis for notice of his complaint.

16

Although Plaintiff need not have identified Defendant Wiley by name in the grievance, Plaintiff must have included factual allegations that were "not so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally." *See Kikumura*, 461 F.3d at 1283. As further described below, the content of Plaintiff's grievance was indeed too vague to provide fair notice of Plaintiff's claim against Defendant Wiley. Moreover, the Court rejects consideration of the course of conduct between Plaintiff and Defendant Wiley (*e.g.*, conversations and an informal letter) in determining the propriety of his grievance because it is outside of the scope and contrary to the purpose of the BOP's grievance procedure.

Nevertheless, even if the Court utilized a totality-of-the-circumstances test, it is clear from the facts that Plaintiff felt that his complaint communicated to Defendant Wiley in July and August 2007 via letter and conversation was resolved. Facts, *supra* ¶¶ 14, 16. Plaintiff explained that he felt that his life was no longer in danger. *Id.* at ¶ 17. Thus, the exhaustion process as to that segment of the underlying events was completed. Plaintiff re-initiated the complaint - and hence the exhaustion process - when he submitted the informal resolution form after the September 25, 2008 altercation. BOP's responses to the subsequent grievance, Remedy ID #516181, indicate that it interpreted Plaintiff's complaint as directed toward the disciplinary process that followed the altercation and the consequence of Plaintiff's removal from the Step-Down program, which is not an unreasonable interpretation of the content of the grievance. Plaintiff did nothing to correct this interpretation of his complaint during the appeals process. In fact, Plaintiff filed subsequent grievances that served to reinforce the BOP's interpretation of his complaint, to the effect that Plaintiff's removal from the Step-Down program was without procedural

due process, not that Plaintiff believed that Defendant Wiley failed to protect him, thereby indirectly causing the September 25, 2008 altercation. *Id.* at ¶¶ 51-54. Plaintiff's complaint, as stated in the grievance, appeals, and subsequent grievances, is clearly focused on his dissatisfaction with his treatment after the altercation, not his then-present belief that the altercation should not have occurred in the first place.[1]

In *Jones*, the Supreme Court "identified the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). The content of a grievance must be enough "to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation." *Id.* (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)).

Plaintiff's statements within the four corners of Remedy ID #516181 are devoid of factual allegations; Plaintiff makes no mention of the altercation, the previous dissemination of an administrative response to his earlier grievance, his conversations with Defendant Wiley (even without identifying Defendant Wiley), Defendant Wiley himself, or any fear experienced by Plaintiff while in the D/B Unit. *See* [#87-4] at 4; *see also* Facts, *supra* ¶¶ 37, 41. Plaintiff utilizes legal jargon (*e.g.*, "deliberate indifference", "failure to protect"), but such conclusory statements in the absence of factual support are inadequate for notice of a claim. *Compare Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)

---

[1] The fact that Plaintiff requested return to the unit where the altercation took place bolsters this conclusion. Facts, *supra* ¶ 52.

(rejecting "labels and conclusions" as inadequate for purposes of Fed. R. Civ. P. 8(a)(2)), *with Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) ("As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming.").

Here, none of the benefits of exhaustion identified by *Jones* are present.  The content of Plaintiff's grievance did not provide sufficient information to trigger an investigation of Defendant Wiley's conduct, and Plaintiff did nothing to bring this alleged omission to light so that the BOP could address his complaint before being subjected to suit.  Further, use of the totality-of-the-circumstances test advocated by Plaintiff relies on Defendant Wiley's memory of informal conversations and written communications, and does not rely on a record which demonstrates that the BOP was aware of Plaintiff's complaint against Defendant Wiley.  Although Plaintiff was not required to advance specific legal theories in his grievances, he was required to attempt to grieve the alleged conduct at issue such that if corrective action could be taken, sufficient notice was provided to do so.  *See Kikumura v. Osagie*, 461 F.3d 1269, 1283 (10th Cir. 2006).  The record provided to the Court is devoid of sufficient notice to correct the conduct of Defendant Wiley alleged here.  Allowing consideration of the totality of the circumstances would defeat the legitimate purposes of the PLRA.  Because the evidence presented does not create a genuine issue of material fact in Plaintiff's favor as to whether his claim against Defendant Wiley was properly exhausted, the Court recommends that the Motion be granted, and that judgment be entered in favor of Defendant Wiley on Plaintiff's remaining claim.

## V.  Conclusion

Accordingly,

IT IS RESPECTFULLY **RECOMMENDED** that Defendant's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies [#87] be **GRANTED**; that judgment be entered in favor of Defendant on Plaintiff's remaining claim on the basis that Plaintiff failed to exhaust administrative remedies as required by the PLRA; and that Plaintiff's claim be dismissed without prejudice.[2]

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

---

[2] Although Defendant argues that dismissal of the unexhausted claim should be with prejudice because any grievances would be untimely if Plaintiff attempted to file them today, *see* 28 C.F.R. § 542.14, there is no evidence that the BOP has rejected Plaintiff's grievances as untimely, which appears to be the prerequisite set forth by the Tenth Circuit to dismiss unexhausted claims with prejudice as opposed to without prejudice.  *See Kikumura*, 461 F.3d at 1290-91; *see also Arocho*, 2011 WL 2292187 at *14 n.8.

Dated:  June 19, 2012

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge